**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

PETER C. AQUIAR,

       Petitioner-Appellant,

v.

LAWRENCE TAFOYA, Warden,
Southern New Mexico Correctional
Facility; ATTORNEY GENERAL
FOR THE STATE OF NEW MEXICO,

       Respondents-Appellees.

No. 02-2348
(D.C. No. CIV-02-677 BB/KBM)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Peter C. Aquiar, a state prisoner appearing pro se, appeals the district court's denial of habeas relief. Although petitioner filed his habeas petition under 28 U.S.C. § 2254, the district court properly construed the petition (seeking restoration of 902 days of earned credit) as challenging the execution of his sentence under 28 U.S.C. § 2241. *See Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000). [1]

Our jurisdiction over petitioner's appeal arises under 28 U.S.C. § 1291. We review de novo the district court's dismissal of a § 2241 habeas petition, *see Patterson v. Knowles,* 162 F.3d 574, 575 (10th Cir. 1998), and we apply the standards set forth under 28 U.S.C. § 2254(d) to the state court decision. [2] We conclude that there is insufficient evidence in Mr. Aquiar's prison disciplinary record to meet the "some evidence" standard established in *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985), and that the state court decision disposing of Mr. Aquiar's claim was therefore "based on an unreasonable determination of the facts in light of the

---

[1]     The dissent argues that the decision in *Montez* is suspect. *Montez*, however, is the law of this circuit, and we must follow it unless en banc review or a Supreme Court ruling directs us otherwise.

[2]     This standard of review mirrors our standard in § 2254 cases. After we grant a certificate of appealability, we review de novo the district court's denial of a state inmate's petition, subject to any deference due to the state court under 28 U.S.C. § 2254(d). *See Wansing v. Hargett*, 341 F.3d 1207, 1210 (10th Cir. 2003).

evidence presented in the State court proceeding." *See* § 2254(d)(2).

Accordingly, we reverse and remand for further proceedings.

## BACKGROUND

On October 22, 2001, Lt. K. Valentine, a corrections officer, filed a report

that he had concluded an investigation involving Mr. Aquiar and another inmate,

Marcus Carter. The report charged Mr. Aquiar with "A/32 - Attempt or

Complicity" and "A/13 - Possession of Escape Paraphernalia." R., Doc. 13,

Ex. C. Lt. Valentine's report contained the following statement:

> On October 22, 2001, at approximately 1000, I, STG Lt. K.
> Valentine, concluded an investigation involving Inmate Aquiar,
> Peter, NMCD #38801 and Inmate Carter, Marcus, NMCD #42543.
> During the course of this investigation, it was discovered that an
> attempted escape had been planned by Inmate Aquiar and Inmate
> Carter. The plan was for Inmate Carter to escape the institution at
> the same time that Inmate Aquiar was to parole out of this facility.
> Escape paraphernalia was found in the possession of Inmate Aquiar
> which consisted of a book containing flight schedules entering
> Canada and addresses in Canada. Some of this information was
> found out through confidential informants. This escape plan
> included the aid of an Officer, which was substantiated by physical
> evidence.

*Id*. A disciplinary officer took statements from Mr. Aquiar, Mr. Carter, and five

corrections officers. The disciplinary officer's investigation report reflects the

following: Inmate Aquiar gave a verbal statement that he was advised that the

escape paraphernalia identified in Lt. Valentine's report was not found in his

property; Officers Valentine, Pennington, Priddy, and Seyler confirmed via verbal

-3-

statements that the escape paraphernalia was found in Inmate Carter's property, not Inmate Aquiar's property; Lt. Valentine gave a verbal statement that "Inmate Aquiar was the leadership in planning this escape;" Capt. Seyler gave a verbal statement that "during the investigation it was discovered that Inmate Aquiar initiated the whole plan and brought the staff member into the plan;" Inmate Carter gave a verbal statement that "he did not make any escape plans with Inmate Aquiar and had no knowledge of the plans. Inmate stated that he does not even know when Inmate Aquiar was going to parole." *Id.* at Ex. D.

The disciplinary officer recommended that the A/13 charge (possession of escape paraphernalia) be dismissed based on the four verbal statements from the officers that the escape paraphernalia was not found in Mr. Aquiar's property. *Id.* at Ex. F. The disciplinary officer decided that the A/32 charge should proceed to a major level hearing. *Id.* At the hearing on October 31st, Mr. Aquiar denied the charges in Lt. Valentine's report. *Id.* at Ex. E. He also submitted an affidavit from Mr. Carter that reiterated that neither Mr. Aquiar nor any "Phantom Officer" was going to help Mr. Carter escape and that there was no physical evidence to substantiate the claim. *Id.* The hearing officer's decision found Mr. Aquiar guilty based on the following:

> 1) The written report by Lt. Valentine, STG, which states that inmate was found with escape paraphernalia in his property and that an investigation into the matter revealed the fact that

> Inmate Carter, in conjunction with Inmate Aquiar and a staff member was planning an escape.
>
> 2) Verbal statement from Capt. Seyler which corroborates the report.

*Id.* at Ex. G. As a result, Mr. Aquiar lost 902 days of earned good time credit.

On November 15, Mr. Aquiar filed an internal appeal of the decision. On March 11, 2002, Mr. Aquiar filed a state petition for writ of habeas corpus. The state district court denied the petition on May 6. Mr. Aquiar's certiorari petition, filed May 13, was denied by the New Mexico Supreme Court on May 20. Mr. Aquiar filed his federal petition on June 11. The magistrate judge assigned to the case recommended denial of relief on the petition, which was adopted by the district court by final order entered December 11, 2002. Mr. Aquiar filed an opening brief and application for certificate of appealability in this court on February 13, 2003.

**DISCUSSION**

On June 3, 2003, we granted a certificate of appealability (COA) on five issues relating to Mr. Aquiar's disciplinary hearing ("June 3, 2003 COA Order"). Because the district court erred on at least one of the COA issues, we need not address the remaining issues. The dispositive issue is "Whether the evidence against Petitioner in the record of the prison disciplinary proceeding meets that

'some evidence' standard established by *Superintendent v. Hill*, 472 U.S. 445 (1985)." June 3, 2003 COA Order.

New Mexico inmates possess a liberty interest in earned credits, *see Brooks v. Shanks*, 885 P.2d 637, 641 (N.M. 1994), and are entitled to due process protection prior to the loss of those credits. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). When a prison disciplinary hearing may result in the loss of earned credits, a prisoner must receive:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) (citation omitted). In addition, "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 454 (citation omitted).

The hearing officer relied on two pieces of evidence in finding Mr. Aquiar guilty on his charge of helping Mr. Carter escape: Lt. Valentine's report and a verbal statement by Capt. Seyler corroborating the report. Lt. Valentine's report states that "it was discovered that an attempted escape had been planned by Inmate Aquiar and Inmate Carter" and the disciplinary officer's report reflects

that Capt. Seyler stated "during the investigation it was discovered that Inmate Aquiar initiated the whole plan and brought the staff member into the plan." R., Doc. 13 at Exs. C, D. But the evidence that Lt. Valentine and Capt. Seyler discovered is not disclosed anywhere in the record. Neither Lt. Valentine's report nor Capt. Seyler's statement contains any actual evidence–specific facts upon which they base their assertions. The report states that "physical evidence" substantiates the escape plan, including the aid of an officer, but the record does not disclose what that evidence might be. *Id.* at Ex. C. No physical evidence was introduced at the hearing. *Id.* at Ex. E.

In addition, there is a reference to "confidential informants" who supplied "some of this information." *Id.* at Ex. C. But the record does not contain a proffer made by prison officials as to what the informants could testify to, nor is there even a simple summary of what the informants told prison officials. The prison officials further failed to conduct any kind of reliability determination of the confidential informants as required by *Taylor v. Wallace*, 931 F.2d 698, 701 (10th Cir. 1991). "Due process requires that there be some evidence supporting the disciplinary determination . . . . A bald assertion by an unidentified person, without more, cannot constitute some evidence of guilt." *Id.* (quotation omitted). All that appears in the record here is a "bald assertion by an unidentified person," and a claim that unspecified physical evidence was found.

The only concrete evidence–the escape paraphernalia–is erroneously linked to Mr. Aquiar in Lt. Valentine's report. The hearing officer perpetuates this error by relying on the escape paraphernalia as evidence for his decision. The disciplinary officer had previously recommended that the charge that Mr. Aquiar had possessed any escape paraphernalia be dismissed based on the testimony of four officers, including Lt. Valentine, who stated that the escape materials were not found in Mr. Aquiar's possession, but were instead found in Mr. Carter's possession. Finally, the one eyewitness, Mr. Carter, the inmate who was attempting to escape, testified verbally and through an affidavit that Mr. Aquiar had nothing to do with any escape plan.

Where prison officials say nothing more than we know an inmate was planning an escape based on confidential informants and physical evidence, this fails to satisfy even the relaxed standard of "some evidence." In the *Hill* case establishing this standard, the Supreme Court concluded that "some evidence" existed that the defendant committed an assault where the disciplinary board had both a written report of an officer describing specific facts and his testimony. *See Hill*, 472 U.S. at 456. That report and the officer's testimony disclosed that the officer had witnessed the immediate aftermath of a fight, discovering an inmate who evidently had been assaulted. *Id.* The officer saw the defendants quickly leaving the scene, and no one else was nearby. *Id.* This, the Court held,

was some evidence that the defendants had committed the assault.    *Id.* at 457.  In contrast, in the instant case, we have no idea what the facts are in the possession of the prison officials that led them to believe that Mr. Aquiar was planning to help Mr. Carter escape.  This is not sufficient to meet the "some evidence" standard.

The order of the district court entered December 11, 2002, is REVERSED and the cause is REMANDED to the district court with instructions to direct the restoration of Mr. Aquiar's earned credits.

The mandate shall issue forthwith.

Entered for the Court


Monroe G. McKay
Circuit Judge

No. 02-2348,  Aquiar v. Tafoya

**Briscoe,**  Circuit Judge, dissenting:

I respectfully dissent.  In my view, the New Mexico state courts reasonably concluded there was "some evidence" to support the disciplinary hearing officer's decision.  I would affirm the district court's denial of federal habeas relief.

Aquiar, a New Mexico state prisoner, contends his prison disciplinary conviction and the resulting loss of good time credits violated his due process rights because there was no evidence to support the conviction.  Because this claim already has been considered and rejected by the New Mexico state courts, our scope of review is extremely limited. [1]  Aquiar will be entitled to federal habeas relief only if he can demonstrate the state courts' ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

_____

[1] I agree with the majority that we are bound by      Montez v. McKinna  , 208 F.3d 862, 865 (10th Cir. 2000), to treat Aquiar's petition as having been filed pursuant to 28 U.S.C. § 2241.    Montez  does not, however, obligate us to apply a de novo standard of review to the claims asserted in Aquiar's petition. Indeed,         Montez recognizes that some of the provisions of 28 U.S.C. § 2254 may apply to a § 2241 proceeding filed by a state prisoner.    See Montez , 208 F.3d at 866.
  In passing, I note that    Montez  is the only circuit decision I have found that holds that a challenge by a state prisoner to the execution of his sentence must be construed pursuant to § 2241.  Other circuits deciding the issue have held that such challenges must be construed pursuant to § 2254.        See Medberry v. Crosby  , 351 F.3d 1049, 1062 (11th Cir. 2003);      Cook v. New York State Div. of Parole     , 321 F.3d 274, 278 (2d Cir. 2003);      Singleton v. Norris  , 319 F.3d 1018, 1023 (8th Cir. 2003);   Coady v. Vaughn  , 251 F.3d 480, 484-85 (3d Cir. 2001);      Walker v. O'Brien , 216 F.3d 626, 639 (7th Cir. 2000);      McFarlane v. Walter  , 179 F.3d 1131, 1134 (9th Cir. 1999).

Under clearly established Supreme Court precedent, a prison disciplinary decision revoking a prisoner's good time credits (assuming the prisoner has a liberty interest in such credits) will satisfy due process concerns if it is "supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 455 (1985). "This standard is met if there [i]s some evidence from which the conclusion of the administrative tribunal c[an] be deduced." Id. (internal quotations omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. Importantly, the Court explained why it adopted this minimal evidentiary standard:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Id. at 456 (internal citations omitted).

After reviewing the record in this case, I am satisfied that the New Mexico state courts reasonably applied the Hill standard in rejecting Aquiar's challenge to

his disciplinary conviction.  In finding Aquiar guilty, the disciplinary hearing officer (DHO) cited two pieces of evidence.  First, the DHO referred to Lt. Valentine's written misconduct report outlining the results of his investigation. The report stated that Valentine had "discovered that an attempted escape had been planned by Inmate Aquiar and Inmate Carter."  ROA, Doc. 13, Exh. C. More specifically, the report stated "[t]he plan was for Inmate Carter to escape the institution at the same time that Inmate Aquiar was to parole out of this facility," and that the "escape plan included the aid of an Officer, which was substantiated by physical evidence."      Id.   Second, the DHO referred to a verbal statement from Captain Seyler "that during the investigation it was discovered that Inmate Aquiar initiated the whole plan and brought the staff member into the plan."  Id., Exh. D at 1;  see id., Exh. F.  In my view, this evidence, considered separately or together, supports the conclusion reached by the DHO.

The majority cites this same evidence and reaches the opposite conclusion.    [2] According to the majority, neither Valentine's written misconduct report nor

---

[2]  The majority purports to apply the standard of review set forth in § 2254(d)(2), i.e., whether the state courts' ruling was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  It is clear, however, that application of the     Hill "some evidence" standard does not require a court to make any factual findings, and there is no indication in the record on appeal that the New Mexico state courts did so.  Thus, the appropriate standard of review is the one set forth in § 2254(d)(1).        E.g.,  Gomez v. Graves  , 323 F.3d 610, 612 (8th Cir. 2003) (applying § 2254(d)(1) standard of review to similar challenge asserted by state prisoner).

Seyler's oral statement discloses the "facts upon which they base[d] their assertions" that Aquiar was involved in an escape plan. Maj. Op. at 6. The majority states that "[n]o physical evidence was introduced at the [disciplinary] hearing" even though Valentine's "report state[d] that 'physical evidence' substantiate[d] the escape plan." Id. In short, the majority concludes it is not enough for a correctional officer to summarize the results of his or her investigative findings. Instead, the officer must also detail or, better yet, present to the DHO what the majority describes as "physical" or "concrete" evidence supporting the officer's findings. In the absence of such support, the majority is unwilling to afford any weight to the officer's report or statement.

Not only does the majority position fail to give proper deference to the state courts' resolution of the issue, it effectively imposes an evidentiary standard more demanding than the "some evidence" standard outlined in Hill and simultaneously ignores the concerns cited in Hill in adopting that minimal standard. In particular, the majority position runs contrary to the goal of "avoiding burdensome administrative requirements that might be susceptible to manipulation" by inmates, and transforms "the disciplinary process" from "a means of rehabilitation" into a mini-criminal trial. See Hill, 472 U.S. at 455.