**Arnulfo ZEPEDA, Plaintiff,**

v.

**Domingo URIBE, Warden, Defendant.**

**Case No. 09 CV 1811 JM (WVG).**

United States District Court,
S.D. California.

April 27, 2010.

---

Arnulfo Zepeda, Imperial, CA, pro se.

Amy Michelle Roebuck, Attorney General, Office of The Attorney General, San Diego, CA, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATIONS

JEFFREY T. MILLER, District Judge.

On February 2, 2010, Magistrate Judge William V. Gallo entered a Report and Recommendation. (Doc. No. 15). The Report and Recommendation, expressly incorporated herein, thoroughly and thoughtfully analyzed Petitioner's claims and recommended that Petitioner's petition for writ of habeas corpus (Doc. No. 1) be granted. Respondent filed an objection and Petitioner filed a reply. (Doc. Nos. 17, 19). Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument.

In his objections, Respondent sets forth essentially the same arguments raised in his response to the original petition. As the Report and Recommendation fully and properly responds to these arguments, the court hereby adopts the Report and Recommendation in its entirety. Petitioner's petition for writ of habeas corpus is

GRANTED. The Clerk of the Court is directed to close the file.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION GRANTING PETITION FOR WRIT OF HABEAS CORPUS

WILLIAM V. GALLO, United States Magistrate Judge.

Petitioner Arnulfo Zepeda (hereafter "Petitioner") has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (hereafter "Petition"). Respondent Domingo Uribe (hereafter "Respondent"), has filed an Answer to the Petition. Petitioner has filed a Traverse to Respondent's Answer. The Court, having reviewed the Petition, Opposition, Traverse, and the documents attached thereto and/or lodged therewith and GOOD CAUSE APPEARING, HEREBY RECOMMENDS that the Petition for Writ of Habeas Corpus be GRANTED.

### I

### *PROCEDURAL HISTORY*

On October 29, 1985, a judgment of conviction was entered against Petitioner for first degree murder and second degree murder by use of a firearm. (Respondent's Lodgment No. 1).

On December 8, 2006, officials at Pleasant Valley State Prison held a disciplinary hearing regarding Petitioner's alleged participation in a riot. Petitioner was found guilty as charged. (Respondent's Lodgment No. 2).

On September 25, 2008, Petitioner filed a Petition for Writ of Habeas Corpus in the Imperial County Superior Court. (Respondent's Lodgment No. 6). On June 2, 2008, the Imperial County Superior Court granted the Petition. (Respondent's Lodgment No. 7).

On September 24, 2008, Respondent appealed the decision of the Imperial County Superior Court. (Respondent's Lodgment No. 8). On March 4, 2009, the California Court of Appeal reversed the decision of the Imperial County Superior Court. (Respondent's Lodgment No. 10).

On March 27, 2009, Petitioner filed a Petition for Review in the California Supreme Court. (Respondent's Lodgment No. 11). On June 10, 2009, the California Supreme Court denied the Petition for Review without comment. (Respondent's Lodgment No. 12).

On August 19, 2009, Petitioner filed the Petition for Writ of Habeas Corpus now pending before this Court.

### II

### *STATEMENT OF FACTS*

This Statement of Facts is taken substantially from the California Court of Appeal unpublished opinion, *In re Arnulfo Zepeda,* No. D053475 (Cal.Ct.App., 4th Dist.Div.1, March 4, 2009) (Respondent's Lodgment No. 10). This Court relies on these facts under 28 U.S.C. § 2254(e)(1). See *Parke v. Raley,* 506 U.S. 20, 35–36, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).

According to prison staff, on November 3, 2006, while there were approximately 300 inmates in the prison yard, two fights broke out in the early afternoon between two Fresno bulldogs (apparently a prison gang) and three Southern Hispanic (apparently another prison gang) inmates. Petitioner was not named as one of the combatants. The fight between inmates Carrillo (a member of the Fresno Bulldog gang) and Aguirre (a member of the Southern Hispanic gang) moved from the front of the Facility C Building 2 toward the soccer goal on the recreation yard. The fight involving inmates Luscano, Chavez

(members of the Fresno Bulldog gang) and Royzman (a member of the Southern Hispanic gang) took place near the corner of Facility C Building 2.

Correctional Officer Martinez used the public address system to order all inmates in the yard to get down. All inmates complied except Carillo and Aguirre. Sergeant Steele instructed staff to form a skirmish line, and then ordered Carillo and Aguirre to "prone out." Both complied.

Correctional Officers escorted the five named combatants, as well as inmates Leon and Petitioner, to holding tanks for medical evaluations and interviews. Correctional Officer Worth prepared a schematic map of the incident. The schematic map showed Leon and Petitioner standing in front of Facility C Building 2, but did not indicate specifically how far they were from Luscano, Chavez and Royzman.

(Respondent's Lodgment No. 10 at 2)

On November 16, 2006, Petitioner was charged with a Rules Violation which alleged that he participated in a riot.

On December 8, 2006, at the disciplinary hearing before the Senior Hearing Officer (hereafter "SHO"), Correctional Officer DeShazo testified that Petitioner was not an active participant in the riot. DeShazo said that he relayed his observation that Petitioner was not involved in the riot to Correctional Officer Worth, who prepared the schematic map of the scene which included where the inmates were when they were ordered to get down. Worth did not recall DeShazo's comment. Correctional Lieutenant Henderson stated that "(it had) been determined that the Southern Hispanic inmates attacked the Fresno Bulldogs, which resulted in (the) riot. Both Petitioner and Leon (were) known Southern Hispanic inmates, of which it is believed they were also participants in the fighting due to (their) placement on the schematic map."

After the SHO determined that a riot took place, the SHO defined "participation" for purpose of the disciplinary proceedings:

"Participation means the inmate knows he is part of the group of two or more intent upon riot, rout or unlawful assembly. Usually this means he failed to leave when the opportunity (sic) or when violence began." "Participation in a riot does not necessarily mean that an individual identified on the schematic map, in a location had to receive injury or produce injury to another, it simply means acting with or supporting another or others with the intent to commit the aforementioned offense. If an individual has allegiances and/or links to a specific group, which is engaged in the riot and the individual fails to disperse or get down at a riot location after instructed to do so and has been identified on the schematic map in the riot location, it is presumed the individual participated in the riot with or without staff observing the individual act of participation." Using this definition of participation, the SHO expressly found that Petitioner was identified as a member of the Southern Hispanic gang, "was identified as being involved in the riot and placed on the schematic map as # 7," and failed to disperse. The SHO acknowledged that the fact Petitioner was "not observed by staff actively participating in the riot" was a mitigating circumstance, but concluded it did not outweigh the preponderance of the other evidence received at the hearing. The SHO found Petitioner guilty of participating in a riot.

(Respondent's Lodgment No. 10 at 3–4)

Petitioner was assessed a forfeiture of ninety days of good time credit. (Respondent's Lodgment No. 2)

## III

### GROUNDS FOR RELIEF

Petitioner claims that the findings of the disciplinary committee were insufficient to find him guilty of participating in a riot. Specifically, he asserts that one factor relied upon by the disciplinary committee (his alleged gang affiliation) is unsupported by the record. Further, Petitioner contends that the California Court of Appeal neglected to address the uncontroverted exculpatory evidence in the record that he did not participate in the riot.

## IV

### STANDARD OF REVIEW

In order for federal subject matter jurisdiction over a petition for writ of habeas corpus to lie, the petition must allege that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C.A. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996. The current petition was filed on August 19, 2009 and is therefore governed by the AEDPA. To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). See *Williams v. Taylor,* 529 U.S. 362, 403, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Section 2254(d) states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was *contrary to,* or *involved an unreasonable application of,* clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented* in the State court proceeding. (Emphasis added).

The Supreme Court interprets § 2254(d)(1) and (2) as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. "Under the unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495.

A state court's decision may be found to be "contrary to" clearly established Supreme court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the court's] precedent." *Id.* at 405–406, 120 S.Ct. 1495; *Lockyer v. Andrade,* 538 U.S. 63, 72–75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). A state court decision involves an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or, "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably extends a legal

principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407, 120 S.Ct. 1495; *Andrade,* 538 U.S. at 76, 123 S.Ct. 1166.

Under § 2254(d)(2), a petitioner may obtain relief by showing that the conclusion of the state court was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Therefore, the court must presume that the state court's factual findings to be sound unless a petitioner rebuts the "presumption of correctness by clear and convincing evidence." § 2254(e)(1). *Miller–El v. Dretke,* 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)

Section 2254(e) (1) states:

In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by *clear and convincing evidence.*

(Emphasis added).

■ "This standard is demanding but not insatiable ... deference does not by definition preclude relief." *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Factual findings may be infected with substantive legal error where the fact-finding process itself is defective. The state court fact-finding process is undermined where the state court has before it, yet apparently ignores, evidence that supports a petitioner's claim. *Id.* at 346, *Taylor v. Maddox,* 366 F.3d 992, 1001 (9th Cir.2004).

■ When there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker,* 501 U.S. 797, 801–06, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000) (overruled in part by *Andrade,* 538 U.S. at 74–77, 123 S.Ct. 1166).

V

*THE DECISION OF THE CALIFORNIA COURT OF APPEAL INVOLVED AN UNREASONABLE APPLICATION OF U.S SUPREME COURT LAW*

In this case, the California Supreme Court denied Petitioner's Petition for Review without comment. (Respondent's Lodgment No. 12). Therefore, the Court "looks through" to the California Court of Appeal's decision. (Respondent's Lodgment No. 10).

Petitioner contends that he is entitled to relief because the California Court of Appeal unreasonably applied U.S. Supreme Court law in its decision denying his claim. Respondent argues that in denying Petitioner's claim, the California Court of Appeal used the correct legal standard.

■ When an inmate challenges the revocation of good conduct credits on federal due process grounds, a reviewing court must apply the standard of review set forth in *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). Pursuant to *Hill,* a prison disciplinary action will not be disturbed so long as "some evidence" supports the action taken. *Id.* at 455, 105 S.Ct. 2768.

The Ninth Circuit has held that the "some evidence" standard of *Hill* is clearly established federal law for AEDPA purposes applicable to prison disciplinary pro-

ceedings, "because the (decision rendered) directly affect(s) the duration of the prison term." *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127–28 (9th Cir. 2006) [*quoting Jancsek v. Oregon Board of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987)].

■ *Hill's* "some evidence" standard assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary ... The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456–457, 105 S.Ct. 2768; *Sass*, 461 F.3d at 1129.

Nonetheless, there must be some indicia of reliability of the information that forms the basis for prison disciplinary actions. *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.1987); *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir.1987); *Luna v. Pico*, 356 F.3d 481, 488 (2nd Cir.2004); *Lenea v. Lane*, 882 F.2d 1171, 1175–1176 (7th Cir. 1989); *Aguiar v. Tafoya*, 95 Fed.Appx. 931, 935 (10th Cir.2004).

■ In this case, the Court of Appeal found, *inter alia*, Petitioner participated in the riot because the schematic drawing of the prison yard where the riot occurred, placed him in the location of the riot. (Respondent's Lodgment No. 10 at 7–8, Respondent's Lodgment No. 13)

The schematic drawing is a depiction of the prison yard where the combatants in the riot, Petitioner, and inmate Leon were standing when they were ordered to "get down." Combatants Carrillo and Aguirre are identified on the schematic drawing as

nos. 1 and 2, respectively. Combatants Luscano, Chavez and Royzman are identified on the schematic drawing as nos. 3, 4 and 5, respectively. Inmate Leon is identified on the schematic drawing as no. 6. Petitioner is identified on the schematic drawing as no. 7. The schematic drawing is not drawn to scale. (Respondent's Lodgment No. 13)

"(Petitioner) was not named as one of the combatants (in the riot) ... The fight involving inmates Luscano, Chavez and Royzman took place near the corner of CFB2 (Facility C Building 2) ... The schematic map showed (inmate) Leon and (Petitioner) standing in front of CFB2, but did[1] indicate specifically how far they were from Luscano, Chavez and Royzman." (Respondent's Lodgment No. 10 at 2)

The Court's review of the schematic drawing (Respondent's Lodgment No. 13) shows that the person who was standing closest to Petitioner was inmate Leon, who was not identified as a combatant in the riot. There is no evidence in the record to suggest that Petitioner and inmate Leon were actively involved in the riot. In fact, the contrary is true. The Court of Appeal noted, "(Correctional Officer R. DeShazo) testified that (Petitioner) was not an active participant in the riot." (Respondent's Lodgment No. 10 at 3). The Rules Violation Report states, "... (Petitioner) was not observed by staff actively participating in the riot ..." (Respondent's Lodgment No. 2 at 4).

Further, the schematic drawing is not drawn to scale. Therefore, it is impossible for this Court (or, for that matter, any other tribunal) to determine how "near" Petitioner was to the rioting combatants

---

1. The word "not" does not appear after the word "did" in the Court of Appeal's opinion. However, a fair reading of the sentence suggests that the word "not" was erroneously omitted. As this Report and Recommenda-

tion discusses *infra*, the schematic map does "not" indicate specifically how far Petitioner was from combatants Luscano, Chavez and Royzman.

Luscano, Chavez and Royzman. Consequently, the evidence that Petitioner was in the location of the riot is, at best, inconclusive, and is unsupported by evidence in the record. Moreover, since the schematic drawing is not drawn to scale, there is no indicia of reliability that the drawing depicts how near or far Petitioner was from the rioting combatants, or if he was even in the location of the riot. As a result, the Court finds that the Court of Appeal's reliance on the "fact" that the schematic drawing placed Petitioner in the location of the riot is not "some evidence" that Petitioner was guilty of participation in a riot. Consequently, the Court of Appeal's opinion involved an unreasonable application of *Hill* and its progeny, with regard to finding Petitioner's placement on the schematic drawing as being in the location of the riot.

Additionally, the Court of Appeal stated: "We also note that Officer DeShazo's statement in the hearing that (Petitioner) was not an active participant in the riot contradicts Lieutenant Henderson's stated *belief* that (Petitioner's) proximity to the fighting ... showed he participated in the riot." (Respondent's Lodgment No. 10 at 8–9) (emphasis added). However, Officer DeShazo's statement is a first-hand eyewitness account of the riot. He had first-hand knowledge of where Petitioner was standing at the time of the riot. Therefore, Officer DeShazo's statement is "some evidence" that Petitioner *did not* participate in the riot.

On the other hand, Lieutenant Henderson was not an eye-witness to the riot nor does it appear that he had first-hand knowledge of the riot. His statement simply reports what other prison personnel did in response to the riot. (Respondent's Lodgment No. 2 at 6, Respondent's Lodgment No. 3 at 2).

Lieutenant Henderson's Incident Report indicates that Petitioner was a "suspect." (Respondent's Lodgment No. 3 at 2). Further, his statement reads in pertinent part, "(i)t has been determined that the Southern Hispanic inmates attacked the Fresno Bulldogs, which resulted in this riot ... (Petitioner) ... (is a) known Southern Hispanic inmate, of which it is believed (he) also (was a) participant in the fighting due to (his) placement on the schematic map." (Respondent's Lodgment No. 2 at 6).

Lieutenant Henderson's statement simply states *beliefs* that Petitioner was involved in the riot based on the unsupported contention of Petitioner's membership in a rival gang and his placement on the schematic drawing. Lieutenant Henderson's *beliefs* cannot be considered "some evidence" that Petitioner participated in the riot. First, they are simply *belief*s. It is unclear from the record whose *beliefs* they are. Even if they are Lieutenant Henderson's *beliefs*, they are not evidence that Petitioner participated in the riot. Second, as the Court has previously found, the schematic drawing, upon which Lieutenant Henderson relied, is not "some evidence" that Petitioner participated in the riot. As a result, the Court of Appeal's opinion involved another unreasonable application of *Hill* and its progeny with regard to its finding Petitioner's placement on the schematic drawing as being in the location of the riot.

## VI

THE DECISION OF THE CALIFORNIA COURT OF APPEAL WAS BASED ON AN UNREASONABLE DETERMINATION OF FACTS IN LIGHT OF THE EVIDENCE PRESENTED

1. *Definition of "Participation In A Riot"*

█ The Court of Appeal stated that the Senior Hearing Officer (hereafter

"SHO") used the following definition of "participation in a riot:"

'Participation' means the inmate *knows* he is part of the group of two or more *intent upon riot*, rout or unlawful assembly. Usually, this means he failed to leave when the opportunity (sic) or when violence began . . . Participation in a riot does not necessarily mean that an individual indentified (sic) on the schematic, in a location had to receive injury [or] produce injury to another, it simply means *acting with or supporting another or others with intent to commit the aforementioned offense* . . .

(If) an individual has allegiances and/or links to (a) specific group, which is engaged in a riot and the *individual fails to disperse from or get down at a riot location after instructed to do so* and has been identified on the schematic in the riot location, it is presumed the individual participated in the riot with or without staff observing the individual act of participation.

(Respondent's Lodgment No. 10 at 3) (emphasis added)

Petitioner was charged and found guilty of violating California Code of Regulations (hereafter "CCR") § 3005(d)(3) [2] which states: "Inmates shall not participate in a riot, rout or unlawful assembly." The SHO cited California Penal Code §§ 404 and 409 as the law which was to be applied to Petitioner's charge. California Penal Code § 404 states:

Riot; elements.

(a) Any use of force or violence, disturbing the public peace, or any threat to use force or violence if accompanied by immediate power of execution by two or more persons *acting together*, and without authority of law, is a riot.

(B) As used in this section, disturbing the public peace may occur in any place of confinement. Place of confinement means any state prison . . .

(Emphasis added)

California Penal Code § 409 states:

Riot, rout or unlawful assembly; remaining present after warning to disperse. Remaining present at a place of riot, etc. after warning to disperse. Every person remaining present at the place of any riot, rout or unlawful assembly, *after the same has been lawfully warned to disperse* . . . is guilty of a misdemeanor.

(Emphasis added)

While the SHO's definition of "participation in a riot" generally comports with California law as noted above, the Court of Appeal's determination of the facts as they apply to the SHO's definition and California law was unreasonable:

### 2. *"Intent Upon Riot"*

The SHO used in his definition of "participation in a riot," the following phrase: "Participation means that the inmate *knows* he is part of a group of two or more *intent upon riot.*" The Court of Appeal did not comment on this part of the SHO's definition.

However, the Court's review of the record presented shows that there is absolutely no evidence whatsoever to even suggest, much less find, that Petitioner "knew" he was part of a group of two or more "intent upon riot." Therefore, the

---

**2.** Petitioner was cited for violation of CCR 3005(c) (Respondent's Lodgment No. 2 at 2) However, it is obvious that § 3005(c) does not apply in this case. § 3005(c) states:

Refusing to Accept Assigned Housing. Inmates shall not refuse to accept a housing assignment such as but not limited to, an integrated housing assignment or a double cell assignment, when case factors do not preclude such.

The Court finds that Petitioner's alleged offense was that he violated § 3005(d)(3).

Court of Appeal's tacit acceptance of this definition and its application to the facts of Petitioner's case is simply unreasonable because there is no evidence upon which it could have relied to find this element of "participation in a riot."

### 3. *"Acting With Or Supporting Another Or Others"*

The SHO used in its definition of "participation in a riot," the following phrase: "... acting with or supporting another or others with intent to commit the aforementioned offense." While this phrase generally comports with California law, the Court of Appeal did not comment on this part of the SHO's definition.

However, the Court's review of the record presented shows that there is absolutely no evidence whatsoever to even suggest, much less find, the Petitioner was "acting with or supporting another or others with intent ..." to riot. Therefore, the Court of Appeal's tacit acceptance of this definition and its application to the facts of Petitioner's case is simply unreasonable because there is no evidence upon which it could have relied to find this element of "participation in a riot."

### 4. *"Failure To Disperse or Get Down"*

The SHO used in his definition of "participation in a riot," the following phrase: "... the individual fails to disperse from or get down after instructed to do so." The Court of Appeal commented on this part of the SHO's definition by stating: "We agree with (Petitioner) that there is no evidence he was ordered to disperse and failed to do so." (Respondent's Lodgment No. 10 at 7) However, it did not comment further.

The Court's review of the record presented shows that this part of the SHO's definition does not comport with California law, nor was there any evidence that Petitioner failed to disperse.

As noted above, California Penal Code § 409 requires that a person who remains present at the place of a riot, after he/she has been lawfully *ordered to disperse,* is guilty of a misdemeanor.

The objective of § 409 is to enable law enforcement personnel to diffuse a riotous situation by ordering persons to remove themselves from the area without the need to distinguish between rioters and bystanders. But, California courts require a clear and present danger of imminent violence before bystanders can be arrested along with participants in a riot. The Ninth Circuit has held that "(a)bsent these compelling circumstances ... the police are at least required to differentiate between the participants and innocent bystanders." *Dubner v. City & County of San Francisco,* 266 F.3d 959, 967–968 (9th Cir.2001).

Here, it is clear from the record that Petitioner was not ordered to disperse. Rather, he was ordered to get down. He complied with that order. To be guilty of participation in a riot, it was required that Petitioner be warned or ordered to *disperse.* Since Petitioner complied with the order to get down, it was impossible for him to *disperse.* Therefore, there is no evidence in the record, nor could there be any evidence in the record, that Petitioner failed to disperse. As a result, the Court of Appeal's tacit acceptance of this definition and its application to the facts to Petitioner's case is simply unreasonable because there is no evidence in the record upon which it could have relied to find this element of "participation in a riot."

Moreover, the Court of Appeal did not acknowledge nor address the objective of California Penal Code § 409, as discussed in *Dubner, supra.* Had it done so, it would have found that prison personnel present at the time and location of the riot did not make a determination whether Pe-

titioner was a participant in the riot or an innocent bystander. Instead, they *assumed* he was a participant in the riot. However, the record contains reliable clear and convincing evidence that Petitioner was not a participant in the riot; rather, he was a bystander. (Respondent's Lodgments Nos. 2 at 7; 3 at 7 and 10 at 8–9)

### 5. *Petitioner was Identified As A Member of One of the Rioting Groups*

The Court of Appeal found the following in finding that "some evidence" supported that Petitioner "participated in a riot:" (1) Petitioner was identified as a member of one of the rioting groups; (2) the schematic drawing placed Petitioner in the location of the riot; (3) he was identified as being involved in the riot and he failed to disperse. (Respondent's Lodgment No. 10 at 7).

The Court has already found that the schematic drawing of the prison yard was not "some evidence" under *Hill* because it had no indicia of reliability and did not comport with other evidence in the record. The Court has also found that Petitioner was not ordered to disperse. Rather, he was ordered to get down and complied with that order, making it impossible for him to disperse.

Therefore, the only reliable evidence, which could be considered "some evidence" under *Hill*, is that Petitioner was identified as a member of one of the rioting groups. While the Court remains faithful to the United States Supreme Court's admonition in *Hill* that it should not reweigh the evidence or judge the credibility of witnesses, this is the only evidence implicating Petitioner in "participation in a riot." However, simply being identified as a member of one of the rioting groups is not "some evidence," as required by *Hill*. Whether or not Petitioner was a member of one of the rioting groups does not show

that Petitioner participated in a riot involving that group. Therefore, the Court finds that this evidence alone is insufficient to meet the standard set forth in *Hill*. See *Cato*, 824 F.2d at 705. As a result, the Court finds that the Court of Appeal's factual findings, as noted above, were unsound. The record presented to the Court rebuts the presumption of correctness of the Court of Appeal's factual findings by clear and convincing evidence. § 2254(e)(1); *Dretke*, 545 U.S. at 240, 125 S.Ct. 2317.

Consequently, for the reasons set forth above, the California Court of Appeal's decision involved an unreasonable application of U.S. Supreme Court law and was based on an unreasonable determination of the facts in light of the evidence presented. The Court RECOMMENDS that the Petition be GRANTED.

### CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge recommends that the Petition for Writ of Habeas Corpus be GRANTED.

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than *March 5, 2010*, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *April 5, 2010*. The parties are advised that failure to file objections within the specified time may waive the right

to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).