U.S. COURT OF APPEALS
10TH CIRCUIT
RECEIVED
2016 NOV -7  PM 12: 27

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| DANNY BARLOR, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Case No.  16-6093 |
| | ) | |
| ROBERT PATTON, | ) | |
| TRACY ELLIS, | ) | |
| OKLAHOMA DEPARTMENT OF | ) | |
| OF CORRECTIONS, et al., | ) | |
| Defendants-Appellees. | ) | |

## BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

COMES NOW, Danny Reece Barlor, hereinafter Plaintiff, with his Brief in Support of the attached Petition for a Writ of Habeas Corpus in the above-entitled and numbered cause, pursuant to the provisions of 28 USC § 2241. Plaintiff hereby adopts and incorporates all issues, allegations and exhibits contained in his previous USC 28 subsection 1983 into his Writ of Habeas Corpus now before this Court.

The Plaintiff is currently incarcerated as inmate number 85688 at the James Crabtree Correctional Center, 216 North Murray Street, Helena, Oklahoma 73741. The Defendant-Appellee is the Oklahoma Department of Corrections, et al.

Plaintiff cannot afford to hire an attorney to represent him and is thus proceeding on a *pro se* basis. It is respectfully requested that this court hold the Plaintiff to a lesser standard than an attorney, in view of his *pro se* status and the findings of ***Hall v. Bellmon***, 935 F2d 1106 (10th Cir 1991) and ***Haines v. Kerner***, 92 SCt 594 (1972).

In this action, the Plaintiff is not challenging his underlying criminal conviction in Cleveland County case #CRF-80-282. He is challenging the execution of his sentence by prison officials, seeking restoration of lost earned credits, which occurred due to a loss in his earned credit level, as well as challenging the condition of his confinement.

The courts have long held that an inmate may initiate a Petition for a Writ of Habeas Corpus to challenge the execution of his sentence under the provisions of 28 USC § 2241. See ***Montez v. McKinna***, 208 F3d 862 (10th Cir. 2000); ***McIntosh v. US Parole Comm.***, 115 F3d 809 (10th Cir. 1997); ***Bradshaw v. Story***, 86 F3d 164, 166 (10th Cir. 1996).

1

The courts have also long held that prisoners do not forfeit all equal treatment rights upon incarceration. Prison practices that result in unequal treatment among prisoners must bear a rational relation to a legitimate penal interest. Lee v. Washington, 390 US 333-334 (1968). To prevail on an equal protection claim, an inmate must prove (1) that similarly situated inmates have been treated differently by the government, and (2) that there is no rational relation between the dissimilar treatment and any legitimate penal interest. ***Turner v. Safley***, 482 US 78, 95-97 (1987); ***Whitmire v. Arizona***, 298 F3d 1134, 1136 (9th Cir. 2002).

In other very similar cases as that of this Plaintiff, Danny Barlor, ODOC inmates have filed an 28 USC § 2241 petition against the Department of Corrections as this Plaintiff, alleging a violation of their due process rights because prison officials revoked their earned credits in a disciplinary proceeding wrongly. See ***Gamble v. Calbone***, 375 F3d 1021 (10th Cir. 2004). In ***Gamble***, the Tenth Circuit held that there was a complete failure of proof of guilt, reversed the matter, and remanded for issuance of the writ of habeas corpus. This case as well as many others including the Plaintiff's shows the pattern and practice of the ODOC prison officials to railroad and wrongfully punish inmates in an arbitrary manner.

## JURISDICTION

Plaintiff is invoking the provisions of 28 USC § 2241 in this actions. He asserts that prison officials have arbitrarily and wrongfully taken previously earned good-time credits, wrongfully demoted him in credit level, wrongfully restricted his eligibility to advance in earned credit level and imposed many directly related sanctions and restrictions upon him. Federal habeas corpus review is warranted and requested. See ***Montez v. McKinna***, 208 F3d 862, 865 (10th Cir. 2000); also ***Aguiar v. Tafoya***, 95 Fed Appx 931 (10th Cir. 2004); also ***Ewards v. Balisok***, 520 US 641 (1997).

Plaintiff asserts that a favorable ruling by this court would greatly affect his length of incarceration.

The US Supreme Court has long held that when a prison regulation or practice offends a fundamental constitutional guarantee, the federal courts will discharge their duty to protect constitutional rights. ***Procunier v. Martinez***, 416 US 405 (1974). Federal habeas corpus review is warranted and requested in this pleading for just cause shown in this action.

In addition, on a related issue, the ODOC has arbitrarily and deliberately has misapplied a DOC policy, which has created due process as well as ex post facto violations and has used those violations to discriminate against the Plaintiff by applying said policy OP-060213. As a result of the misapplication of this policy, the Plaintiff's security status has been manipulated to place the Plaintiff in maximum security as stated in his original complaint filed in the United States District Court. The policy at issued and from which the Plaintiff seeks relief has been previously scrutinized by this court in ***Smith v. Scott*** and Plaintiff appeals to this court for relief under the provisions of ***Smith v. Scott*** and requests the application of 2 part ex post facto test in this instant case as in ***Weaver v. Graham***, 450 US 24, 29 (1981) which required proof of both retroactivity and disadvantage.

## GROUNDS ASSERTED

Ground One: A private prison official arbitrarily revoked earned credits, demoted Plaintiff's earned credit level, and greatly restricted or prevented Plaintiff from promotion to a higher earned credit level.

Ground Two: Prison officials have retroactively applied a change in prison policy and regulations to Plaintiff, which has prejudiced him. This is in violation of the ex post facto clause of the US Constitution's 14th Amendment.

Ground Three: Prison officials did conceal evidence of officer involvement where a serious inmate injury did occur and used Plaintiff as a scapegoat to shift blame as well as avoid consequence for their unprofessional actions. Plaintiff believes he has a constitutional right not to be subjected to the arbitrary actions of governing officials.

Ground Four: The Oklahoma Department of Corrections is in violations of the prohibition of the ex post facto clause by applying a prison policy to his disadvantage and prejudice which was not foreseeable, and has given the Plaintiff security points that has also resulted in blatant discrimination.

3

## STATEMENT OF THE CASE

Plaintiff Danny Barlor is incarcerated pursuant to his conviction for Armed Robbery in the District Court of Cleveland County in the State of Oklahoma. He was sentenced in May 1980 to 20 years in prison. In this action, Plaintiff is not attacking his conviction in his criminal case. Rather, he is challenging the execution of his sentence by the Department of Corrections (DOC), as well as the conditions of his confinement.

On or about June 6, 1985 and while incarcerated at the Dick Connors Correctional Center in Hominy, Oklahoma, Plaintiff was "accused" of the offense of escape. Plaintiff was never formally charged with that alleged offense by the DOC or by the Osage County District Court. He did not receive any disciplinary write-up. As will be set forth subsequently in this Brief, he is nevertheless still being punished and prejudiced for this alleged offense despite several years of diligent efforts to have all mention of this alleged offense expunged from his field file jacket and DOC records.

On or about October 2, 1991 and while incarcerated at the Dick Connor Correctional Center, Plaintiff was given a disciplinary write-up by prison officials due to a "confidential statement" from another inmate which supposedly alleged that Plaintiff had "a plan of escape." As a result, Plaintiff was found guilty in an administrative hearing and severely sanctioned. There was no "real" evidence of any such plan for escape at said hearing. As a result of the disciplinary conviction for the alleged "plan of escape," Plaintiff lost earned credits and had his earned credit level reduced to the lowest level, level one. See 57 O.S. § 138

Pursuant to DOC policy at the time OP-060100 and OP-060213, Plaintiff was promoted from Level One to Level Two on March 2, 1993. On June 2, 1993, Plaintiff was promoted from level Two to level There. On or about November 2, 1993, he was promoted from level three to level Four. He remained on level Four until April 18, 2003 due to good behavior and a clear disciplinary record.

On April 18, 2003 and while at the Great Plains Correctional Facility in Hinton, Oklahoma, a private prison contractor for the DOC, a private prison auditor arbitrarily and

4

retroactively applied a revised DOC policy which was promulgated and implemented on April 9, 1997 to reduce Plaintiff's earned credit level from level Four to level Two. This resulted in Plaintiff's loss of 22 earned credit days per month for every month since that action, loss of inmate job pay for all months, loss of four hours visitation and the number of visitors he is allowed to have, greatly reduced telephone privileges, loss of right to possess personal property items, including a television etc., loss of privilege to be housed in an Honor Housing Unit and other sanctions associated with the reduction in level. In addition to this , Plaintiff was given an additional ten (10) security points making his assessed security status maximum from medium security, which he had had since 1982 when he was classified upon his incarceration at the Lexington Assessment and Reception Center (LARC) in Lexington, Oklahoma.

When the private prison auditor took the above action, the Plaintiff was not afforded any type of notice or hearing. Neither was this action associated with any type of misconduct because Plaintiff had 12 years of clear conduct at this time and has repeatedly tried to resolve this matter informally by discussing it with a variety of correctional officers and staff.

A Tenth Circuit case very similar to that of Plaintiff is ***Aguiar v. Tafoya***, 95 Fed Appx 931 (10th Cir 2004). In ***Aguiar***, an inmate was found by a prison disciplinary proceeding to be guilty of attempt or complicity in connection with an alleged prison escape. This resulted in the inmate's losing several hundred earned credits.

The Tenth Circuit held that the findings of a prison disciplinary board were not supported by at least "some evidence" on record as necessary to uphold the board's conclusion that the inmate committed the offense of "attempt or complicity." Two prison officials said nothing more than that they knew an inmate was planning an escape based on confidential informants and physical evidence. The record contained no proffer as to what the informants could testify to, nor was there even simple summary of what the informants told prison officials, and escape paraphernalia was erroneously linked to the inmate by a prison official.

In Plaintiff's complaint presented to the United States District Court evidence was submitted that the 1991 misconduct for attempted escape at issue was based entirely on confidential witness testimony fabricated by a lone inmate. Indeed, on the misconduct itself it is stated "none" where disposition of physical evidence if any is required. In addition to this, the confidential witness himself later recanted his statement, which Plaintiff also presented as a notarized affidavit to the United States District Court in support of his complaint.

5

The dispositive issue is whether the evidence against the Plaintiff in the record of the prison disciplinary proceeding meets the "some evidence" standard established by *Superintendent v. Hill*, 472 US 445 (1985). Oklahoma inmates possess a liberty interest in earned credits, created by the Due Process Clause of the 14th Amendment. *Harper v. Young*, 64 F3d 563, 566 (10th Cir. 1995); *Wolff v. McDonnell*, 418 US 539, 556 (1974). Oklahoma inmates are entitled to due process protection prior to the loss of earned credits. *Wolff*, supra; *Mitchell v. Maynard*, 80 F3d 1433, 1445 (10th Cir 1996). 57 O.S. § 138

It is the Plaintiff's representation that based upon his personal experience and based on discussions with numerous other inmates and inmate law clerks over the years, that private as well as State facilities in the DOC have a pattern and practices of intentionally impeding, restricting, and interfering with an inmate's attempts to exhaust his administrative remedies in an attempt to avoid prisoner lawsuits.

As an example, Plaintiff respectfully requests that this Court would give its consideration to an attachment (G-1) that was submitted to the United States District Court in support of Plaintiff's claim. This attachment is a memorandum from Debbie Morton, the director's designee, administrative review authority, and is a response to the grievance coordinator who had dismissed the Plaintiff's attempt to exhaust administrative relief as being "out of time." By Ms. Morton's own admission, this Plaintiff's complaint is timely which should have resolved the issue as it was properly presented according to the DOC grievance procedure. But, instead, Ms. Morton advised the grievance coordinator to retract his decision as being out of time, and counseled him on how to respond. This is only one example of the difficulty and resistance this Plaintiff has encountered in his attempts to exhaust his remedies on every level and at every opportunity on the administrative level. By Mr. Elliott's own admission in the Special Report of Review of Factual Basis of Claims Asserted in Amended Complaint pursuant to 42 USC § 1983 state that this Plaintiff has on at least 18 occasions attempted to resolve his issues. (Please see page 7 of that report).

Other relevant examples Plaintiff submitted a "Request to Staff" (RTS) to his Housing Unit Manager, Mr. Spruiell, at Great Plains Correctional Facility (GPCF) on April 24, 2003 regarding the above "escape" incident to which Mr. Spriell did not respond. On June 18, 2003, Plaintiff sent another RTS to GPCF Warden Sam Calbone regarding the same issue and the failure of his unit manager to respond. Warden Calbone likewise failed to respond.

On May 2, 2003, Plaintiff submitted a grievance regarding this matter to Warden Calbone at GPCF. Relief was denied on July 14, 2003. On July 29, 2003, Plaintiff appealed the denial of his grievance to the DOC Director, Ron Ward, and relief was denied on August 6, 2003. On January 8, 2004, Plaintiff filed his legal notice in accordance with the exhaustion requirements of 57 O.S. § 564 and the Oklahoma Government Tort Claims Act under 51 O.S. § 151, 152, et seq. and completed the exhaustion of all available administrative remedies at the relevant time.

On January 28, 2004, Plaintiff filed a petition for a writ of mandamus in the District Court of Oklahoma County, as case number CJ-2004-707. In this action, Plaintiff asserted that private prison officials had violated the prohibition against ex post facto by retroactively applying a revision in prison policy to his prejudice citing the very similar relevant Tenth Circuit decision in Smith v. Scott, 223 F3d 1191 (10th Cir. 2000) and others.

On may 20, 2005, relief was denied by the District Court of Oklahoma County. Plaintiff filed a motion to reconsider on June 2, 2005 and relief was denied on June 13, 2005. Plaintiff appealed to the Supreme Court of Oklahoma as case number 102,337 and relief was denied on September 26, 2005.

On October 18, 2005, Plaintiff filed a civil rights complaint on the same issues in the US District Court as case number CIV-05-1216-T. On December 29, 2005, this case was dismissed without prejudice for failure to pay the initial partial filing fee. Plaintiff represents that he made a good faith effort to submit the proper documents to cause the timely payment of the initial partial filing fee but this was prevented by prison officials' acts and omissions. In any event, Plaintiff now understands that since this matter involves his length of incarceration, the proper legal forum is a Petition for a Writ of Habeas Corpus under 28 USC § 2241 instead of a civil rights complaint under 42 USC § 1983.

Prior to filing the above-mentioned civil rights complaint Plaintiff essentially started over in a diligent, good faith attempt to fully and completely exhaust his available remedies. The originals of these exhaustion documents are already on file in the USDS as attachments to CIV-05-1216-T. Some, but perhaps not all of these documents are attached to this pleading, including Request to Staff, Grievance number 2005-070, Responses from DOC Director designee Debbie Morton, and a letter dated August 2, 2005 from Kevin Moore, DOC coordinator of the Offender Records Unit stating that "you have filed a grievance on this issue and appealed the facility

7

head's response to the director's designee." Plaintiff asserts that has repeatedly and fully exhausted all available remedies.

A threshold question that must be addressed in a habeas corpus case is that of exhaustion. Exhaustion is based on principles of comity, exhaustion is not jurisdictional. The state may waive a prisoner's failure to exhaust, by failing to raise an exhaustion defense in federal district court. No such defense was raised in the above listed civil rights complaint. Some cases may present special circumstances that make it appropriate to address the merits of a habeas petition, notwithstanding the lack of compete exhaustion, such as when a State's process is inadequate to protect the prisoner's rights. See ***Harris v. Champion***, 15 F3d 1538 (10th Cir 1994); ***Granberry v. Greer***, 481 US 129, 131 (1987).

It is similarly held in ***Graham v. Johnson***, 94 F3d 958 (5th Cir 1996) that exhaustion of state remedies is not required in a federal habeas case if it would plainly be futile. The failure to exhaust State remedies is not a jurisdictional or inflexible bar to the grant of federal habeas relief to a state prisoner. ***Hoxie v. Kerby***, 108 F3d 1239, 1242 (10th Cir 1997). It was specifically held that no exhaustion requirement applies to a habeas petition filed under 28 USC § 2241. See ***Capps v. Sullivan***, 13 F3d 350, 354 n. 2 (10th Cir 1993).

The US Supreme Court has determined that the States must have a full and fair opportunity to resolve constitutional claims and to provide the necessary relief. ***O'Sullivan v. Boercke***l, 526 US 838, 845 (1999). It is the Plaintiff's assertion that Oklahoma does not provide this in the context of the issues raised in this action for prison inmates. There is no adequate remedy providing the relief sought by Plaintiff in this type of situation. **Coleman v. Thompson**, 111 S. Ct 2546 (1991). This case is cognizable for federal habeas relief.

GROUND ONE

A PRIVATE PRISON OFFICIAL ARBITRARILY REVOKED EARNED CREDITS, DEMOTED PLAINTIFF'S EARNED CREDIT LEVEL AND GREATLY RESTRICTED OR PREVENTED PLAINTIFF FROM PROMOTION TO A HIGHER EARNED CREDIT LEVEL

As set forth above, on or about June 6, 1985 and while incarcerated at the Dick Conner Correctional Center (DCCC), Plaintiff was accused of escape. He was not given DOC

8

misconduct and was not charged criminally. On or about October 2, 1991 and while still at DCCC, Plaintiff was given a disciplinary misconduct by DOC officials for a "plan of escape" due to a confidential statement from another inmate who was unidentified at that time.

Pursuant to DOC policy at the time, OP-060100 and OP-060213, Plaintiff was demoted to Level One (the lowest level) as a result of the 1991 misconduct at issue and promoted to Level 2 on March 2, 1993. On June 2, 1993, he was promoted to Level 3. On or about November 2, 1993, he was promoted to Level 4. He remained on Level 4 due to good behavior until April 18, 2003. As a result of being found guilty of the 1991 misconduct for attempted escape, Plaintiff suffered the loss of 365 days good time (earned credits). However, there was a loss of approximately 630 earned credits due to a loss in earned credit level from October, 1991 until he was reinstated to Level 4 status on or about November 1993, a combined total of over 1000 earned credits. Plaintiff was not assessed with maximum points on either the 1985 alleged escape, or the 1991 misconduct for attempted escape.

On April 18, 2003 and while incarcerated at the private prison known as the Great Plains Correctional Facility, a private prison auditor arbitrarily and retroactively applied a revision in DOC policy OP-060107(I) and/or OP-060103(II) which was promulgated and implemented on April 9, 1997. This resulted in Plaintiff's loss of monthly earned credits for every month since that time and numerous other direct and indirect sanctions for the rest of Plaintiff's incarceration. This is only one occasion of several where the application of said policy has affected Plaintiff's security status to his disadvantage as well as being responsible for the loss of his earned credits.

In a similar case, *Mayberry v. Ward*, 43 Fed Appx 343 (10th Cir 2002) the Tenth Circuit affirmed that under Oklahoma law, as state prisoner has a liberty interest in properly earned good time credits, and is entitled to due process protection prior to loss of those credits. 57 O.S. § 138. An Oklahoma prisoner is entitled to notice and a hearing prior to retroactive demotion in earned credit level and a prison auditor lacks the authority to unilaterally interpret a filed record, especially one which does not contain a misconduct report. As set forth the Plaintiff alleged "escape" in 1985 did not even result in a misconduct report. DOC policy OP-060211 (III)(a) sets forth the proper procedure for determining a loss of earned credits.

In another similar Oklahoma case, *Warnick v. Booher*, 425 F3d 842 (10th Cir 2005) this Tenth Circuit held that a DOC auditor improperly took earned credits without affording the inmate due process.

9

The legal maxim of delegate *potestas non potest delegari* is applicable in this Plaintiff's case. A delegated authority cannot be delegated. The Oklahoma Legislature gave the Department of Corrections the authority to grant earned credits to inmates, and to revoke some upon affording them due process. This is set forth in state law 57 O.S. § 138. The Legislature did not, however, give the Department of Corrections the authority to delegate this power to private prison employees who work for a profit-making corporation; and who thus have a vested financial interest in keeping their "merchandise" (penitentiary inmates) incarcerated for as long as possible when the Oklahoma prison system is overcrowded, as it has been for well over two decades. The DOC is forced to contract with private prison vendors to house inmates. The more crowded the prison system, the more business there is for the private prisons. The Oklahoma taxpayers bear the financial burden of funding the DOC and its private prison contractors. It may be of some interest to this Court that an article in Prison Legal News dated August 2015 has stated that it is a private prison policy to enter in to bed guarantees, or "lock up quotas" with the DOC, lock up quotas ensure that bed space contracts are kept regardless of whether or not that bed space is occupied or unoccupied and is only incentive to keep prisons filled.

Arbitrary, retroactive application of changed prison rules by private prison auditors is a form of fraud, waste, and abuse of taxpayers' dollars as well as being violative of ex post facto prohibition. This issue should be fully investigated, litigated and adjudicated in a public forum with oral arguments and briefs before this Tenth Circuit Court. A hearing is requested, as is appointment of counsel to represent the Plaintiff.

The Tenth Circuit has in the past been critical of the private prison at issue in this particular incident, the Great Plains Correctional Facility, regarding the improper issuance of "bogus" write-ups given to inmates wrongfully, with subsequent denial of due process. See *Gamble v. Calbone*, 375 F3d 1021, 1029 (10th Cir 2004); *Wilson v. Jones*, 430 F3d 1113 (10th Cir 2005); also see *Miller v. Menghini*, 213 F3d 1244, 1246 (10th Cir 2000); *Harper v. Young*, 64 F3d 563, 566 (10th Cir 1995) as well as *Cotton v. Calbone*,

In this Plaintiff's case, he has been, and still is being, punished very severely for what is at most an inchoate offense. That is an offense that has allegedly been committed, even though the substantive offense of escape was not consummated. Plaintiff Danny Barlor has never been convicted in disciplinary or district court of the crime of escape and there has been absolutely no "real" evidence of his ever having attempted to escape from prison.

10

In another similar case, ***Burnsowrth v. Gunderson***, 179 F3d 771 (9th Cir 1999), the Court held that due process was violated when a prison disciplinary board convicted an inmate of escape after that board held a hearing at which no shred of evidence of the inmate's guilt was presented. As in Plaintiff Barlor's case at issue, the disciplinary conviction in Burnsworth was based on a confidential prison informant. The disciplinary hearing was devoid of evidence to support a finding of guilty of escape citing ***Superintendent v. Hill***, 472 US 445, 457 (1985), requiring that prison disciplinary convictions be supported by "some evidence" in order to satisfy due process. Accordingly, the court concluded that the hearing violated the inmate's 14th Amendment rights.

When a prison disciplinary hearing may result in the loss of earned credits, a prisoner must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. ***Wolff***, supra. In addition, revocation of earned credits does not comport with the minimum requirements of procedural due process unless some evidence in the record supports the findings of the prison disciplinary board. ***Hill***, supra.

In Plaintiff's case at issue herein the record does not contain a proffer made by prison officials as to what the informant could testify to, nor is there even a summary of what the informant told prison officials. The prison officials further failed to conduct any kind of reliability determination of the confidential informant, as is required by Taylor v. Wallace, 931 F2d 698, 701 (10th Cir. 1991). All that appears in the record here is a "bald assertion by an unidentified person," and a claim that unspecified physical evidence was found.

In ***Aquiar***, supra, the Tenth Circuit held that where prison officials say nothing more than we know an inmate was planning an escape based on confidential informants and physical evidence, this fails to satisfy even the relaxed standard of "some evidence" established in ***Hill***, supra. In Aquiar, supra, the court reversed and remanded to the District Court with instructions to direct the restoration of Mr. Aquiar's earned credits. Plaintiff Barlor is requesting the same finding from this Court as in Aquiar.

11

## GROUND TWO

PRISON OFFICIALS HAVE RETROACTIVELY APPLIED A CHANGE IN PRISON POLICY AND REGULATIONS TO THE PLAINTIFF THAT HAS PREJUDICED HIM. THIS IS IN VIOLATION OF THE EX POST FACTO CLAUSE OF THE US CONSTITUTION'S 14TH AMENDMENT

Under a program enacted by the Oklahoma Legislature, the Department of Corrections operates a system of good time credits, whereby prisoners can reduce their term of imprisonment, pursuant to the provisions of 57 O.S. § 138.

The Department of Corrections is statutorily authorized to develop a written policy and procedure whereby inmates shall be assigned to one of four earned credit classes, and has done so in the form of DOC policy OP-060213 and its successor, OP-060107. These are internal DOC regulations, which have the force and effect of law on penitentiary inmates. See ***Prock v. District Court of Pittsburg County***, 630 P2d 772 (Okl. Cr. 1981); ***Smith v. Scott***, 223 F3d 1191 (10th Cir 2000). The class level to which an inmate is assigned determines the rate at which credits are earned. Each earned credit is equal to one day of incarceration.

Earned credits may be subtracted from the total credits accumulated by an inmate, upon recommendation of the institution's disciplinary committee, following due process.

In this Plaintiff's case at issue, his disciplinary write-up for an alleged "plan of escape" in 1991 resulted in a disciplinary hearing before only one individual who served as the Hearing Officer, Prosecutor, Judge, and Jury. This was in violation of DOC disciplinary policy OP=060125 and was a denial of due process. And Plaintiff did appeal the disciplinary conviction, but to no avail.

As has been set forth previously, Plaintiff was also previously "accused" of an escape in 1985. Plaintiff did not receive a disciplinary write-up and no formal charges were filed in the District Court regarding that alleged allegation. Although DOC policy requires that there be either a disciplinary write-up or formal charges filed before punishing or restricting for any incident of this nature as stated by Department of Corrections Director Larry R. Meachum in OP-

12

060101. This policy is being violated in this Plaintiff's case. Plaintiff was lowered in earned credit level to level one (the lowest level), all of his earned credits were revoked, and his eligibility for advancement in earned credit level was restricted. This was in addition to the other three allowable sanctions per OP-060125.

The custody assessment procedures in OP-060103(II)(B)(3) states:

"Consider all escapes or attempted escapes that have occurred during the stipulated time period prior to the custody assessment...necessary documentation for Escape or Attempted Escape will be a misconduct conviction, felony or misdemeanor conviction, as evidenced by a judgment and sentence...every effort will be made to verify the disposition of escape charges."

The DOC Systems of Incarceration policy OP-060107(I)(D)(2) states:

"Misconduct Record – inmates having an active Class X misconduct or escape points will not be eligible for promotion to level 3 or 4 until the points expire."

According to the above two DOC policies, an inmate having an "escape history" will be assessed with escape points all throughout his current incarceration. This was not always the situation, however. At the time of Plaintiff Barlor's conviction, sentencing, and incarceration, the relevant DOC policies did not have a lengthy restriction on advancement in earned credit level for an escape offense(s). Thus, the subsequent change(s) in DOC policy regarding escapes was not foreseeable in 1985 and in 1991 when offense allegations were made and said policies should not be applied to the Plaintiff. In support of this the Oklahoma Department of Corrections has stated in *__Smith v. Scott__* that "the policy at issue is not retroactive and that misconduct security points expire ten years after the date of his escape." The application of these changes is a violation of the ex post facto clause of the 14th Amendment to the US Constitution. Furthermore, the DOC's misinterpretation of the policy at issue allows the Department under color of state law to "pick and choose" to whom this policy will be applied to. As has been previously stated prison practices that result in unequal treatment among prisoners must bear a rational relation to a legitimate penal interest. To prevail on an equal protection claim, an inmate must prove (1) that similarly situated inmates have been treated differently by the government, and (2) that there is no rational relation between the dissimilar treatment and any legitimate interest. Plaintiff did make request to the USDC in his response to the Supplemental Report and Recommendation that the Court require the DOC to release the following information (1) the number of inmates who

13

are similarly circumstanced as this Plaintiff who have had security point reductions as a result of the 1997 misapplied policy at issue and (2) the current number of inmates who have had security point reductions 10 years after the date of an escape as stated by the DOC in ***Smith v. Scott***. The release of this statistical information would substantiate the Plaintiff's claim of ex post facto as well as due process violations that has been brought before this Court. Plaintiff respectfully asks this Court to require that the DOC would release the information requested to determine ex post facto as well as due process violations have occurred by the DOC to the Plaintiff's prejudice and disadvantage by applying said policy retrospectively as well as retroactively.

In ***Smith v. Scott***, 223 F3d 1191 (10th Cir. 2000) this Tenth Circuit analyzed an almost identical situation. A key question this Court considered is whether the phrase "active misconduct security points" as used in the old version of the regulation encompasses the term "active custody assessment points" in the Escape History section "from the 1997 amendment of Op-060102."

In Plaintiff Barlor's situation, the two alleged escapes generated two types of classification points: both "misconduct security points" for one year and for purposes of security assignment, and "escape history points" for the rest of his incarceration. Because the old DOC regulation only referred to "misconduct security points" he should have been eligible for promotion to earned credit levels 3 and 4 after one year and security misconduct points expire after 10 years as stated in ***Smith v. Scott***. Plaintiff in this case should be afforded the regulation in effect at the time of the commission of his underlying criminal offense, his conviction, and his incarceration.

Both the Oklahoma Constitution, Article II § 1 and the US Constitution, Article 1 § 10 prohibit ex post facto violations. An agency regulation (such as the DOC policies at issue herein) which are legislative in nature, are encompassed by this prohibition, because a legislative body "cannot escape the constitutional restraints on its power by delegating its law-making function to an agency." ***US v. Bell***, 991 F2d 1445, 1450 (8th Cir. 1993); Also ***US v. Saucedo***, 950 F2d 1508, 1510 n. 12 (10th Cir 1991). Thus, the contested regulations must be treated as laws for the purposes of this litigation.

To fall within the ex post facto prohibition of the US Constitution, a law must be retrospective, that is, it must apply to events occurring before its enactment, and it must

14

disadvantage the offender affected by it, by altering the definition of criminal conduct, or increasing the punishment for the crime. See ***Smith v. Scott***, supra.

In Plaintiff Barlor's case, the amendment to the DOC regulation governing earned credit, under which any inmate with "active custody assessment points" is not eligible for promotion to earned credit levels 3 or 4 during the length of his incarceration was a substantial charge of the prior version of the regulation, as was the application of additional security points due to the misinterpretation of the policy at issue. This was not foreseeable at the time of the alleged offense(s) therefore retroactive application of the amendment to punish the Plaintiff was barred by the ex post facto clause. See ***Smith v. Scott***, supra.

Whether a state law (or DOC policy) is properly characterized as falling under the ex post facto clause is a federal question that federal courts must determine for themselves. See ***Lustgarden v. Gunter***, 966 F2d 552, 553 (10th Cir. 1992); ***US v. Bell***, 991 F2d 1445, 1450 (8th Cir. 1993).

In an Oklahoma case, ***Arnold v. Cody***, 951 F2d 280, 283 (10th Cir. 1991), the court applied a two-part test in holding that Oklahoma's emergency time credits statute violates the ex post facto clause. Also see ***Lynce v. Mathis***, 519 US 433, 441 (1997); ***Weaver v. Graham***, 450 US 24 (1981).

As set forth above, the ***Smith v. Scott***, supra case is very similar and in some way identical to that of this Plaintiff. This Tenth Circuit found in ***Smith*** that:

> "We find that the 1997 amendment to OP-060213 was not foreseeable. This decision is based upon several factors. First, and most importantly, the language of the 1988 version of OP-060213 plainly lacks any indication that 'escape history points' are the same as 'misconduct security points.' The ODOC has not pointed to any other document, statute, or regulation which would support its interpretation."

This Court went on in the Smith decision to find that "based upon these factors we find that the 1997 amendment was a substantive change which was not foreseeable when the Petitioner was charged with the escape misconduct. It application to Mr. Smith was a violation of the ex post facto clause and due process notions of fair notice, and the writ of habeas corpus should be granted."

The Plaintiff has stated before this Court that there are comparisons between his issues and those of the Petitioner Steve Smith, and that those comparisons are to some degree identical.

In **_Smith v. Scott_**, the Petitioner suffered demotion in level and loss of earned credits as a result of a misapplied DOC policy, as did Barlor. In **_Smith v. Scott_**, the Petitioner was given additional security points by a DOC policy that was proven to be in ex post facto as well as due process violations, as was Barlor. However, in addition to these disadvantages and prejudices, Barlor was placed in maximum security as a result of the security points given him by the policy at issue. And for no other reason than having excessive security points as stated in CIV-15-66-D. The circumstances which revolve around this maximum placement occurred at the Oklahoma State Reformatory in January 2013. Maximum security placement of the Plaintiff occurred in March 2013, and continued until June 30, 2015. The Plaintiff went to great lengths in his Response to Supplemental Report and Recommendation and in his Response to Defendant's Motion to Dismiss, or in the alternative Motion for Summary Judgment to give a true and factual account of a 2013 incident that was used by DOC officials to place the Plaintiff in maximum security by using due process as well as ex post facto violations. As previously stated, the Plaintiff does not have legal counsel to accurately present his issues to the Court and the Plaintiff's intentions was to give the USDC insight to events as they actually occurred, so that the Court could see the true nature of these events and have the necessary advantage needed to render an unbiased decision in CIV-15-66-D. The Defendants would lead this Court to believe that allegations made against Ms. Ellis are "absurd allegations" as well as deny that any documents exist in relation to these allegations. However, this Plaintiff did in good faith present these documents to the USDC. In addition to this, these documents are supporting evidence to this Plaintiff's complaint, was xeroxed, logged and dated by facility law library services, and mailed by US mail to the Court Clerk, USDC. All documents are related to this Plaintiff's complaint and are signed and dated by DOC personnel. Ms. Ellis did use here influence to manipulate the disciplinary process as well as Plaintiff's security status. Ms. Ellis did conceal evidence of this Plaintiff's innocence where there was officer involvement where an inmate injury did occur as Plaintiff stated in his original complaint.

In respect to these documents, Plaintiff invokes the provisions of 2247 in this action and respectfully requests this Court to acknowledge the documents at issue in light of the Defendants denial of the existence of said documents and because the DOC has prevented the Plaintiff from presenting a complete and proper defense in violation of **_Brady v. Maryland_**, 373 US 83 (1963) and **_US v. Bagley_**, 473 US 667 (1985). **_Holmes v. South Carolina_**, 126 S.Ct. 1727, ____, (2006)

(citing **_State V. Gregory_**, 343 S.C. 543, 541 S.E.2d 541 (2001)(third party [or documentary] evidence is admissible if it "'raise[s] a reasonable inference or presumption as to [the defendant's] own innocence.

With regard to the documents referred to, the Plaintiff did present these documents as attachments to the USDC in support of his claim of ex post facto and due process violations as well as damages that have occurred as a result of those violations. As an example, the maximum packet dated January 29, 2013 and presented to the USDC as attachment E2 does state that this Plaintiff "is in need of maximum security placement as he poses a threat to the security of the facility staff." (OSR) Even though all evidence of this alleged incident has been expunged from Plaintiff's filed file jacket, this packet will be viewed by the Oklahoma Pardon and Parole Board at the Plaintiff's next scheduled hearing and will certainly influence any decisions made regarding this Plaintiff. This maximum packet would not have occurred were it not for the maximum points given to Barlor in 2003 as a result of OP-060213 and, to verify this, the offender who actually committed the battery and convicted in disciplinary court for the offense was subsequently transferred to another medium security facility. In addition to being placed in maximum security attachments H-1, H-2 section C.9 states Plaintiff had no misconduct to place him in maximum security, section 10, D and E states Plaintiff was denied transfer, from a maximum security to a medium security facility, due to the 1985 and 1991 alleged offenses that support, the Plaintiff's claim of due process as well as ex post facto violations.

To further substantiate the Plaintiff's claim that violations have occurred the maximum packet (attachment E-2) was dated January 29, 2013, however, the disciplinary conviction responsible for the decision regarding maximum placement was overturned by the warden of the facility (OSR) where the alleged battery was said to have occurred on 2/13/13 stating that due process had been denied. See attachments E-1 and B-4. Hence, the only consideration given to the maximum placement of the Plaintiff were the security points given as a result of the misapplied policy (OP-060213) in 2003 for alleged occurrences in 1985 and 1991. By DOC policy maximum placement consideration only takes place when an offender has 13 or more security points. The Plaintiff simply points this out to show that the allegation of battery was not the reason for his maximum placement.

In considering the request the Plaintiff has made to this Court in regard to the DOC documents at issue the Plaintiff would ask this Court to consider attachment B-4 section A-5

17

where the warden of the OSR facility, Tracy McCollum, has stated "documentation was not provided for the reason of denying the viewing of the video." As well as attachment B-1 where the Holdenville maximum facility Investigator Lt. Stanley has stated that "I have tried on 4 occasions to receive video and statements needed I have been unable to receive items." And also the Disciplinary Officer's statement in attachment B-3. G. Robinson has stated "unable to obtain video evidence from writing facility."

Representation for the DOC has stated several times in his Joint Response Brief that there were no attachments or documents and uses this as a basis to ask this Court to set this Plaintiff's complaint aside, citing Hall v. Bellmon, 935 F2d 1106, 1110 (10th Cir. 1991) and Dunn v. White, 880 F2d 1188, 1197 (10th Cir. 1989). "A plaintiff must assert facts which are supported by the evidence and mere conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." Plaintiff also invokes the provisions of these established case laws. The Joint Response Brief presented to this Court on behalf of the DOC states that Mr. Barlor's allegations in regard to Defendant Ellis are "absurd," (page 15, lines 1-3). However, in this context, by the Attorney General's own admission, Ms. Ellis' actions are construed as "ill-willed" in the event this Court determines, based on the enclosed attachments, that evidence was, in fact, concealed. Plaintiff would ask this Court in light of said documents which DOC deny exists what is it that facility staff at OSR is attempting to hide or conceal from this Court? Plaintiff did make request to the USDC that the DOC be required to release the 1/3/2013 surveillance video tape so that determination of the true nature of the issue at hand is this instant case would be made.

The Plaintiff in this instant case has carefully read all correspondence received from this Court and has only added the attached documents as a result of the DOC's denial that these documents exist. The Plaintiff did make reference to the documents as attachments in all motions mailed and filed in the USDC as well as deposited in the United States mail, after having been logged and dated, exact copies of all correspondence to the Oklahoma Attorney General's office. The Plaintiff believes he has presented to this Court evidence of due process and ex post facto violations as well as violations of DOC policies to the Plaintiff's prejudice and disadvantage. And because the Plaintiff has laid claim to these violations he asks this Court to acknowledge an additional attachment labeled as E-5, which directly relates to the issues centered in this Writ and

18

shows that disadvantages resulting from OP-060213 are current as well as ongoing since the misapplication of this DOC policy.

Plaintiff contends he was placed in maximum security as a result of Ms. Ellis manipulating his security status as well as the disciplinary process to cover for officer involvement where a serious inmate injury did occur as stated in his original complaint.

Plaintiff maintains he was denied constitutional protection afforded him under the Double Jeopardy Clause. The DOC is not authorized to inflict multiple punishments upon the Plaintiff for the same offense. It is this Plaintiff's assertion that prison officials did conceal evidence of officer involvement where an inmate injury did occur. Plaintiff was placed in maximum security in an attempt to make him less credible in regard to this incident and excessive security points at issue and given by the misapplication of OP-060213 were used to justify his maximum security placement. This policy is not retroactive as stated by the DOC in **_Smith v. Scott, supra,_** and should have never been applied to this Plaintiff.

WHEREFORE the reasons set forth above, Plaintiff prays that this Tenth Circuit Court grant the relief requested in this case and issue an appropriate order to the Oklahoma Department of Corrections.

Respectfully submitted,

Danny Barlor #85688
JCCC Unit 4E
216 North Murray Street
Helena, Oklahoma 73741
(580) 852-3221 c/o Jo Gwinn, Unit Manager

## Certificate of Mailing

I, Danny Barlor, hereby certify that on the 3 day of November, 2016, I mailed a true and correct copy of the foregoing Brief to: Court Clerk, United States Court of Appeals for the Tenth Circuit, Denver, Colorado.

19

Appellate Case: 16-6093   Document: 01019716770   Date Filed: 11/07/2016   Page: 20

**MISCONDUCT REPORT**

Parole/Comm/PPCS
Dkt. Date_____

**OFFENSE REPORT**

Name of Facility  DCCC

Facility
Computer Code  B9

**SECTION I**

| Name of Inmate | ODOC Register Number | Date of Offense |
|---|---|---|
| Barlor, Danny | 85688 | Time 1340 hrs, 10 |

Place of Offense  DCCC

Housing Assignment
RHU 153

Offense  Attempted Escape

Offense
Computer Code 163

Description of incident (to include any unusual inmate behavior)

On 10-8-91 Information was received in the investigators office confirming I/M Danny Barlor #85688 was attempting to escape from DCCC. This matter has been under investigation since 10-8-91.

Staff or Inmate Witness (if any)

Confidential Witness Testimony

Disposition of Physical Evidence (if any)

None

Immediate Action Taken (to include the use of force and prehearing detention)

I/M placed in RHU

Name and Title of Reporting Employee

Name  Bill McKenzie

Title  Special Investigator

Signature of Reporting Employee

Date  10-18-91   Time 1542

Name and Title of Accepting Staff Member

Name  CR Carter

Title  Lieutenant

Date  10-14-91   Time 745 Am

Referred for Investigation by

Name  CR Carter

Date  10-14-91   Time 745 Am

**SECTION II**     Inmate should initial appropriate response

___ I have received a copy of the written charge against me. I realize that I have a right to remain silent and I understand that I have a right to an impartial hearing.

___ I request a hearing.

___ I request a hearing but I waive my right to 24 hours preparation time.

___ I waive my right to a Disciplinary Hearing on the above charge. I do this of my own free choice with full knowledge that this shall be considered as a plea of guilty and that allowable sanctions be imposed with no right for appeal.

Signature of Inmate

ODOC Register Number  #85688   Date 10-14-91   Time 1:03 pm

___ Inmate chose not to sign for a copy of the Misconduct Report at this time.

Misconduct Report Delivered to above inmate by:

Date Report Delivered: 10-14-91
Time Report Delivered: Approx. 1:04 pm

Your Disciplinary Hearing will be scheduled on a docket which will commence within the next 72 hours (excluding weekends and holidays) from the receipt of this Report.

C-1

ORIGINAL:     Director
FIRST COPY:   Field File

DOC-062001 (R08/88)

## INVESTIGATION REPORT

Investigating Officer

_Steve A Malwell, Cpt._          10-14-91                    1:15 P.M.

Statement of Inmate regarding offense

_I am not guilty of this. If I was going to escape with inmate Burch, It would have been better for me to stay at KSM with him instead of moving to A&C which I did._

____ Inmate would like to call the following witnesses:

Name _____     Can testify to: _____

Name _____     Can testify to: _____

[X] Inmate does not wish to present witnesses

_Jim Barlow_
(Inmate's Signature)

____ Inmate desires a Staff Representative Assigned

[X] Inmate does not desire a Staff Representative Assigned

Statement(s) of inmate or staff witness or others

[X] Written confidential witness testimony attached

____ List of approved witnesses attached

____ Discretionary action taken regarding witness testimony. Documentation/Justification attached

Summary of facts of investigation. State supporting information establishing offense. DO NOT restate the charge.

_Inmate Barlow #85688 Claims he is not guilty of this offense. He claims if he was going to escape, it would have been better to stay in the Unit. Outside this office. He is accused of attempting to escape with, instead of requesting to be moved, and was moved to A&C. Inmate claims he only a casual acquaintance at most with inmate Dale Burch. Reporting Employee's statement supports the Charge. Referred to the Disciplinary officer_

Hearing Date _____10/16/91_____        _Steve A Malwell, Cpt._ Date _10/14_
                                          Signature of Investigator
Hearing Time _____0800_____

Hearing Location _____RHu_____

I acknowledge receipt of this Report

_Jim Barlow_ _____ Date _10/14_
Inmate's Signature

ORIGINAL:       Director
FIRST COPY:     Field File
SECOND COPY:    Inmate                    G-2                    DOC  062002  (R78)

Tape No. _____
Side _____
Footage _____

## DISCIPLINARY HEARING ACTIONS

I. Name of Facility _____DCCC_____ Facility Code __29A__ Date of Violation _10-2-91_

Name of Inmate (Last Name) ___Barlor___ (First Name) ___Danny___ M.I. _____

Violation _Attempted Escape_ Violation Code __16-3__ Class of Offense (A) B

Hearing Date _10-16-91_ Inmate Number __85688__ Time _5:55 am_ Place _RHU_

Assigned Staff Representative __N/A__

II. I understand that I waive the opportunity of this case being appealed if I plead guilty to this offense. _Inmate Refused To participate in this hear_

Inmate Signature and Number

PLEA: 1. Guilty _____ Inmate's initials _____ 2. Not Guilty __✓__ Inmate's initials _____

III. Finding with Vote Records
1. Guilty __✓__ 2. Not Guilty _____
Evidence relied upon for Finding of Guilt _Report written by Special Investigator Bill McDowell,_
_Confidential witness Testimony_

IV.

| Punishment imposed: | | Sanction Code | | Suspension |
|---|---|---|---|---|
| 1. | Disciplinary Segregation 30 Days | A-1 | for _____ | da |
| 2. | Loss of 365 Days of Earned Credits | A-2 | for _____ | da |
| 3. | _____ | _____ | for _____ | da |

Basis for punishment imposed _Punishment Imposed is Due To The seriousness of the offense And T_
_Fact That This Type of Behavior is Detrimental To The Security of The Facility_

Disciplinary Officer's Signature _Cpt Joel Sutton_

V. As a result of conviction for subsequent offense prior to expiration of the suspended punishment, the previous suspended punishment is hereby revoked: to run consecutive to the new punishment.

Previous Violation: _____

Previous Punishment: 1. _____ 2. _____ 3. _____

Date of Imposition: ___/___/___

Facility Head Review __✓__ Affirm _____ Dismissed _____ Modified _____ Order For Rehearing _____
Date _10-17-91_ Signature _Tom Champion_

VI. I have received a copy of the dispostion.
Date _10-17-91_
Inmate's Signature and Number _Danny Barlor #85688_

ORIGINAL: Director
FIRST COPY: Field File
SECOND COPY: Inmate

a-3

DOC 062003 (R787)

State of Oklahoma        )
County of Hughes         )

## AFFIDAVIT

I, David H Bettes , residing at d.c.f - E-A-207
_____, do hereby under oath and penalty of
perjury, aver, affirm, state, and depose that:

While residing At Conners Correctional Facility I knew Banny Barlor. At No Time during The Time I've known him has he ever spoken To me about an "escape Plan", Nor To my knowledge has he ever spoken To Anyone else about an "escape Plan" Nor To my knowledge has he ever been Part of an escape Plan. I Attest That the Aforementioned is True.

Affiant saith further: [ ] Yes; [ ] No.

_____
(Affiant's Signature)

Subscribed and sworn to before me this 27 day of MAY , 2010

_____        _____
(Comm Expr. Date) 4-15-2019        (Notary Public Signature)

CARLA HOOVER
NOTARY
# 11003473
EXP. 04/15/19
PUBLIC
STATE OF OKLAHOMA

a-4

July 21, 2005

RECEIVED

JUL 2 7 2005

GREAT PLAINS

## MEMORANDUM

TO:        Sam Calbone, Warden
              Great Plains Correctional Facility

FROM:     Debbie L. Morton, Manager
              Director's Designee
              Administrative Review Authority

SUBJ:      **Danny Barlor, #85688**
              **05-1485; 05-70**
              **1; Classification**

The attached grievance was returned to the inmate because it is out of time. However, this action effects the inmate at each classification review and therefore, is considered to be timely. An amended response should be prepared to answer the inmate's issue.

Per OP-090124, the reviewing authority must respond within fifteen working days of receipt of the returned grievance. Once the grievance has been reinvestigated and responded to, please forward the amended response and the original grievance/paperwork to Deborah Romine with a copy of the response only to Deborah Romine, Administrative Programs Officer, Administrative Review Authority.

Thank you for your cooperation in this matter.

For your information, the inmate does **not** receive a copy of this memo.

/DR

Attachment

cc:    Dennis Cunningham, Administrator, Private Prisons

G-1



*[handwritten notes at top right, partially illegible]*

# Oklahoma
# Department of C

3400 N. EASTERN — P.O.
OKLAHOMA CITY, OKLAH
(405) 427-3511

**LARRY R. MEACHUM**
DIRECTOR

**JOHN GRIDER**
ASSOCIATE DIRECTOR

**CLIFF SANDEL**
Deputy Director
Administrative Services

**JOY HADWIGER**
Deputy Director
Community Corrections

**GARY A. PARSONS**
Deputy Director
Eastern Division

**GARY D. MAYNARD**
Deputy Director
West Western Division

**C. S. MYNATT, M.D.**
Medical Director

**R. MICHAEL ODY**
Deputy Director
Probation and Parole

**THOMAS WHITE**
Deputy Director
Programs and Services

**JOYCE JACKSON**
Public Information

**TOM LOVELACE**
Chief of Security Internal Affairs

June 25, 1984

MEMORANDUM

TO:     Thomas F. White, Deputy Director
        Divison of Programs and Services

FROM:   Larry R. Meachum, Director

SUBJ:   <u>Revision in OP-060101</u>

Effective August 1, 1983 the inmate classification system was changed regarding escapes. The following is a revision of that memorandum pertaining to sufficient documentation for considering an escape for the Initial Security Assessment and the Security Reclassification Assessment.

> Necessary documentation for escape shall be a conviction of a felony or misconduct, a conviction for escape as evidenced on a rap sheet or written documentation from appropriate Law Enforcement or Criminal Justice personnel if the escape was from a jurisdiction other than the Oklahoma Department of Corrections. Alleged escapes from the Oklahoma Department of Corrections jurisdiction for which there is not a misconduct conviction or conviction in district court shall not be considered for security classification.

Inmates whose security classification are effected by this policy revision are eligible for immediate reclassification. Copies of this memorandum shall be made available to the inmates by posting it in each living area and the law library.

LRM/bh - 298

cc:  John Grider          Tom Lovelace
     Joy Hadwiger         All Facility Heads
     Gary A. Parsons      Stephen W. Kaiser
     Gary D. Maynard      Les Crabtree
     Cliff Sandel



Case 5:15-cv-00066-D   Document 20-11   Filed 05/29/15   Page 5 of 6

MEMORANDUM

DATE:        January 29, 2013

TO:          Lesia Miser, Administrator
             Classification and Population

FROM:        Tracy McCollum, Warden

RE:          Justification for Maximum Security Placement
             Offender Name and Number: BARLOR, DANNY 85688

The above referenced offender is in need of maximum security placement as he poses a threat to the security of facility staff for the following reasons:

1. Incident/situation that occurred which resulted in this request (be very specific) ON 01/03/2013 OFFENDER BARLOR, DANNY 85688 WAS INVOLVED IN AN ALTERCATION WITH 3 OTHER OFFENDERS RESULTING IN 1 OFFENDER BEING SENT TO THE EMERGENCY ROOM AND HE REMAINS IN THE HOSPITAL AT THIS TIME. BARLOR WAS PLACED IN SHU AND DROPPED TO L-1. OFFENDER BARLOR WAS FOUND GUILTY OF 04-4 CLASS X MISCONDUCT. UCC RECOMENDS TRANSFER TO A MAXIMUM FACILITY.

2. Total number of misconducts offender has received this incarceration. Specify the number which are violent and the number which were violent against staff.
   TOTAL MISCONDUCTS-15 VIOLENT 6
   01/29/2013 04-4 PARTICIPATING IN AN ACTIVITY THAT DIRECTLY RESULTS IN THE INJURY OF ANOTHER PERSON CLASS X. 11/30/11 09-2 POSS OF A WEAPON CLASS X, 03/04/11 02-23 SELL/TRADE/GIVE PRESCIBED DRUGS CLASS X, 02/19/11 04-4 ACTIVITY RESULTING IN INJURY CLASS X, 10/02/91 16-3 ATEMP TO ESCAPE CLASS X, 12/15/88 04-3 BATTERY OF ANOTHER PERSON CLASS X

3. Has a misconduct(s) been written as a result of the incident/situation precipitating this request? If so, list the charge. If not, explain why.
   YES: 04-4 PARTICIPATING IN AN ACTIVITY THAT DIRECTLY RESULTS IN THE INTENTIONAL INJURY OF ANOTHER PERSON.

4. Is there an internal affairs investigation on-going as a result of the incident/situation, or has an internal affairs investigation already been completed? Give details.
   NO



**OAG/AJS/Barlor v Patton - CIV-15-66 (WD)/0057**

E-2

Case 5:15-cv-00066-D    Document 20-11    Filed 05/29/15    Page 6 of 6

5. List any known gang associations and gang activities of the offender.

6. Attach copies of all related incident reports, misconducts and sanctions imposed, or any other pertinent information related to this request.

☑ Approved          ☐ Disapproved

_____          2/26/13
Signature of Administrator, Classification and Population          Date

If disapproved, state reason(s) why below and return to the requesting facility.

Note: Offender transfer packet is to be attached to this justification form.

(5)

OAG/AJS/Barlor v Patton - CIV-15-66 (WD)/0058

OFFENDER MISCONDUCT APPEAL FORM
DUE PROCESS REVIEW

Appeal # OSR 13-08

I.      Name of Offender _Barlor_                    _Danny_                          DOC # _85688_
                    Last Name                      First Name

Violation _Battery 04-4, Class X_        Offense Date _01/03/2013_                    Hearing Date _01/25/2013_

II.     Due Process Review:

1. ☐   Offender provided written notice of the charge.
2. ☐   Offender provided at least 24 hours to prepare after receiving notice of the charge before the hearing was conducted
3. ☒   Offender provided copies of evidence used. (except any confidential informant statements and only photocopies or written description of any physical evidence)
4. ☒   Offender afforded the opportunity to call witness/es
5. ☐   If relevant witnesses were not allowed at the hearing, were their written statements submitted and is there a discretionary action form?
6. ☒   Offender permitted to present documentary evidence.
7. ☐   Offender permitted to attend hearing. If not, is there documentation as to why?
8. ☐   Was there a determination of the reliability of any confidential informant testimony?
9. ☒   Is there a written explanation of the evidence used for a determination of guilt?
10. ☐  Is there a written reason for the discipline imposed?
11. ☒  Is there "any/some" evidence of guilt?
12. ☒  If applicable, was a staff representative/mental health staff representative assigned?
13. ☒  No direct involvement by the hearing officer?

Finding/Issue:   **See attachment**


Reviewer's Printed Name and Signature ___Linda Monks___ _Lol cellents_                    Date _February 13, 2013_

III.    Facility Head Action
        1. Affirm ☐          2. Dismissed ☐      | 3. Order Re-hearing and Re-investigation ☒ |        4. Modified ☐

Printed Name and Signature _Tracy McCollum_  _T. M. M._                    Date _February 13, 2013_

IV.     I have received a copy of the due process review.

        _Danny Barlor_                                          _2-15-13_
        Offender Signature              DOC Number                Date

        _J W Orward_                                            _2-15-13_
        Staff Witness                                            Date

V.      If affirmed, to appeal I must forward my appeal to the director no later than 30 calendar days after receiving this due process review and must use form DOC 060125V.

Original:     Commitment Document Folder                                      DOC 060125 L
First Copy:   Field File
Second Copy:  Offender                                                        (R 12/10)

E-1

OFFENDER MISCONDUCT APPEAL FORM
DUE PROCESS REVIEW

Appeal # OSR 13-08

I.    Name of Offender Barlor                    Danny                         DOC # 85688
                      Last Name              First Name

Violation Battery 04-4, Class X        Offense Date 01/03/2013                Hearing Date 01/25/2013

You have alleged you were not:

**(A.4.)Permitted the opportunity to present relevant witnesses or to submit relevant written witness statements.**

The Investigator indicated on the Investigator's Report that you wished to call offender Robinson as a witness. Offender Robinson did not testify during your hearing and there is not a Witness Discretionary Action Record for offender Robinson giving the reason.

**(A.5.)Permitted to present relevant documentary evidence.**

The Investigator indicated on the Investigator's Report that you wished to present documentary evidence and you also requested during your hearing to view the video. Per OP-060125 (F.3.c.) "If videotapes or audiotapes are part of the evidence, the hearing officer and the offender will review those items prior to or during the hearing and such review will be documented." Documentation was not provided for the reason of denying the viewing of the video.

You have alleged there was no:

**(B.2.) Written statement of the evidence utilized for a determination of guilt.**

Per OP-060125 (IV.D.2.): "The finding of guilt on the "Disciplinary Hearing Report" form must be documented by a written statement by the disciplinary officer and a copy provided to the offender. The reasons must point out the essential facts upon which inferences were based, mentioning what evidence the reporting officer relied on. The statement regarding the evidence relied upon for the finding of guilt shall specify the offending behavior of the offender

The Disciplinary Hearing Officer's statement written in Section III does not contain the language required by policy.

**\*Based on the above, due process was not provided.  I am ordering a re-hearing and re-investigation for this offense.\***

At least **24** hours prior to your re-hearing you will receive written notification of the scheduled date and approximate time of your re-hearing.

Original:     Commitment Document Folder                                      DOC 060125 L
First Copy:   Field File
Second Copy: Offender                                                          (R 12/10)

B-4

## Investigator's Report

Investigating Officer (Print): _Stanley_

Offender Name and Number: _Barlow   85688_   Date: _2-17-13_

Offense: _Battery_   Offense Code: _4-4X_   Date of Offense: _1-4-13_

Statement of offender regarding offense: _At hearing_

☒ Offender wishes to call witness/es   ☐ Offender does not wish to present witness

Name: _Street_   Can testify to: _Incident_

Name: _Robinson_   Can testify to: _Record_

| | YES | NO | (One box should be checked for each statement) |
|---|---|---|---|
| 1. | ☐ | ☒ | Offender provided documentary evidence to investigator. If yes, state evidence. |
| 2. | ☐ | ☒ | Statement(s) provided by witness/es attached (or document refusal to provide information). |
| 3. | ☒ | ☐ | Discretionary action taken regarding witness testimony. Documentation/ justification attached. |
| 4. | ☒ | ☐ | Offender has received photocopy/description of all evidence. |
| 5. | ☐ | ☒ | Written confidential witness testimony/evidence taken (not provided to offender). |
| 6. | ☐ | ☒ | A staff representative will ONLY be appointed if offender meets criteria specified in OP-060125 Section III. item A. Assignment of a staff representative is warranted. If so, assigned representative is: _____ |
| 7. | ☒ | ☐ | Offender requested documentary evidence. If yes, state evidence: _Video_ _____. If denied, state reason for denial: _____ |
| 8. | ☒ | ☐ | CRC attached (front and back side ) |

Additional facts discovered by investigator not in incident reports, evidence, and/or witness statements: _None, I have tried on 4 occasions to recieved video + statements needed I have been unable to recieve items_

**TO BE COMPLETED ONCE STAFF MEMBER AFFIRMS THE CHARGE(S):**

Your disciplinary hearing will normally be scheduled on a docket, which will commence within seven days (excluding weekends and holidays) from the date the responsible staff person affirmed the charge against you.

_2-19-13_   _1400_   _EC229_   _Stanley_
Hearing Date   Approximate Hearing Time and Location   Investigator's Signature

I acknowledge receipt of this report, all attachments, and the contents therein. (4-4238)

Date _2/17/13_

_____
Offender's Signature

Original:   Commitment Document Folder
First Copy:   Field File
Second Copy: Offender

DOC 060125B (R 10/12)

B-1

# Attachment

# 15

OAG/AJS/Barlor v Patton - CIV-15-66 (WD)/0108

OMS0199D            MALE OFFENDERS           DATE: 01/13/16
PAGE 2 OF 3    OKLAHOMA DEPARTMENT OF CORRECTIONS      TIME: 02:26:46 PM
               CUSTODY ASSESSMENT SCALE

DOC: 85688

7. ASSIGNED PROGRAM PARTICIPATION (since last classification)       0

☒ None, wating list, enrolled, participating       = 0 pt
☐ Completed program within past 2 years (unless has points in escape section)    = -1 pt

| Recommended Program | NO ASSESSED NEEDS/PROGRAMS ALREADY COMP | End Date | |
| Recommended Program | VoTech | End Date | |
| Recommended Program | Masonry | End Date | 07/12/04 |
| Recommended Program | Business and Basic Computer Technology | End Date | 11/26/03 |
| Recommended Program | Education | End Date | |
| Recommended Program | GED | End Date | 03/15/79 |
| Recommended Program | Daily Living Skills | End Date | 02/01/99 |

8. ADJUSTMENT (indicate earned credit class level assigned)       0
☐ Level 1                     = 1 pt
☒ Level 2 (or has points in escape section)    = 0 pt
☐ Level 3 and 4 (unless has points in escape section)    = -1 pt

9. CURRENT AGE       0
☐ Age 25 or younger       = 2 pts
☐ Age 26 to 31       = 1 pt
☒ Age 32 to 39 (or has points in escape section)    = 0 pt
☐ Age 40 to 49 (unless has points in escape section)    = -1 pt
☐ Age Over 50 (unless has points in escape section)    = -2 pts
Offender's current age is:   59

10. COMPREHENSIVE CUSTODY SCORE (add items 1-10)      Total Score:   16

C. SCALE SUMMARY AND RECOMMENDATIONS      Assessed Custody Level:   MAXIMUM

1. CUSTODY LEVEL INDICATED by SCALE
☐ 6 or fewer points on items 1-9      = Minimum
☐ 7-12 points on items 1-9      = Medium
☒ 12 or more points on items 1-3      = Maximum
☐ 13 or more points on items 1-9      = Maximum

2. MANDATORY OVERRIDES (No lower than medium security) reason is required
☐ Life/Life without Parole      ☐ Restricted Earned Credits With Excess Days    ☒ None
☐ Time Left to Serve (Highest Crime Category)

3. DISCRETIONARY OVERRIDES FOR HIGHER CUSTODY LEVEL reason is required
☐ Circumstances of the offense    ☐ Management Problem    ☒ None
☐ History of Violence    ☐ Escapes
☐ Gang Affiliation    ☐ Felony Detainer
☐ Time left to serve    ☐ Pending Cases
                 ☐ Other (specify):

4. DISCRETIONARY OVERRIDES for LOWER SECURITY LEVEL reason is required
☐ Circumstances of the offense    ☐ Outstanding Conduct    ☐ None
☐ Time Left to Serve    ☒ Other (specify):   4YRS CLEAR CONDUCT

5. RECOMMENDED CUSTODY LEVEL
☐ Minimum (< 7300 days)    ☒ Medium    ☐ Maximum

6. Community Placement (<2920 remaining and meet eligibility for community as outlined in OP-060104)
☐ YES    ☒ NO

7. GPS Placement after 90 days at community as outlined in OP-061001)
☐ YES    ☒ NO

8. Custody Level Assignment:   MEDIUM

9. Comments: OFFENDER HAS MAX POINTS HE HAS LEVEL 4 BUT HE ALSO HAS A ESCAPE FROM 1991, OFFENDER HAS BEEN MISCONDUCT FREE SINCE 2011 UCC RECCOMENDS TRANSFER TO MEDIUM FACILITY.

DOC 060103A (H) (R 10/14)

OAG/AJS/Barlor v Patton - CIV-15-66 (WD)/0106

# OKLAHOMA STATE DEPARTMENT OF CORRECTIONS
## New Arrival / Adjustment Review / Earned Credit Level - Nov 2008    DOC# 85688

## Offender Information

| | | |
|---|---|---|
| Facility _____JCCC_____ | Facility Arrival Date __10/28/2015__ | LARC Arrival Date __05/19/1982__ |
| Name _BARLOR, DANNY R_ | DOC Number _85688_   Gender __MALE__ | Date of Birth __03/21/1955__ |
| Date of Assessment __08/10/2016__ | Housing Restrictions ____NO____   Identification ___NO___ | |
| Name of Emergency Contact _Barlor, Ester_ | Relationship _Mother_ | Phone Number __(405)609-6176__ |
| Address _4600 Se 26th Del City, OK 73115_ | Will I/M reside at this address after re-entry? ___NO___ | |

## Sentence Information

85%   NO   57 O.S. 1991 Sec 521 eligible   Not eligible.

PPWP eligibility  NO _____   Days Remaining __2390__

Assessed Security  MAX   Security Points  28   Assigned Security   MED   Mandatory Override? _____

Misconduct History _____   Active Misconduct Points   0   Date of last Misconduct _11/16/2011_

Parole Date   02/01/2017   Parole Stipulations  None found

Parole Conditions  None found

Escape History _____   Escape Points ____

| Facility | Security Level | From Custody | Escape Date | Apprehension Date |
|---|---|---|---|---|
| | | | | |

Escape Comment  Escaped from DCCC on 6/29/1985.

## Current Patterns of Behavior

Performance Rating = Poor, Good, Excellent, Outstanding

Staff ___OUTSTANDING___   Program Participation __OUTSTANDING__   Job __OUTSTANDING__

Other Offenders ___OUTSTANDING___   Personal Hygiene __OUTSTANDING__   Living Area __OUTSTANDING__

### Program / Job Evaluations

| Month/Year | Rating | Assignment | |
|---|---|---|---|
| 08/2016 | Good | Unassigned: | UNEMPLOYED |
| 07/2016 | Good | Unassigned: | UNEMPLOYED |
| 06/2016 | Good | Unassigned: | UNEMPLOYED |
| 05/2016 | Good | Unassigned: | UNEMPLOYED |

## Case Plan

| Initial Plan Needs | Plan of Action | Projected Enrollment | Completion | Restrictions/Comment(s) |
|---|---|---|---|---|
| Updated Plan Needs | Plan of Action | Projected Enrollment | Completion | Comments |
| Education | Daily Living Skills | COMPLETED | 02/01/1999 | Smart 3/16/90 & IPCS 6/17/83 |
| Education | GED | COMPLETED | 03/15/1979 | Smart 3/16/90 & IPCS 6/17/83 |
| VoTech | Masonry | COMPLETED | 07/12/2004 | |
| VoTech | Business and Basic Computer Technology | COMPLETED | 11/26/2003 | |
| NO ASSESSED NEEDS/PROGRAM | No Plan Needed | | | |

E-5

# OKLAHOMA STATE DEPARTMENT OF CORRECTIONS

## New Arrival / Adjustment Review / Earned Credit Level - Nov 2008    DOC# 85688

Warden/District Supervisor or designee approval _____

Pre-Release

Financial

Employment

Program Referral

Residence

Comment

| Earned Credit Level Eligible | Effective Date | Action | Comment |
|---|---|---|---|
| LEVEL 4 | 01/01/2016 | NO CHANGE | Stay out of trouble and find a job to maintain le |

Prepared by _____    Date AUG 15 2016

Chairperson _____    Date AUG 15 2016

Member _____    Date AUG 15 2015

Date of Next Review    12/08/2016    Comments    INMATE HAS 9,703 DAYS REMAINING - ECL 4 1/1/16.

Offender Signature _____    Date AUG 15 2016

OMS0188D    DOC 060203A (R 11/08)    RUTLMARK    08/14/2016 14:25

Darry Barker
JCCC #858588 Unit 4-E
216 North Murray Street
Helena, Okla. 73741-1017

JCCC
LEGAL MAIL

United States Court of Appeals
for the Tenth Circuit
Office of the Clerk
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80357